## HOME STATE LIFE INS. CO. v. RUSSELL.

### No. 25557.  Jan. 14, 1936.

Spielman, Cantrell & McCloud, for plaintiff in error.

Coffey, Seaton & Coffey, for defendant in error.

PHELPS, J.  The question presented by this appeal is whether a beneficiary of life insurance may enforce payment thereof where the insured has come to his death while committing a felony, the policy containing no express provision either excepting or including such cause of death.

The defendant insurance company issued its policy on the life of Rufus Russell, naming plaintiff as beneficiary.  About a month later Rufus Russell was killed by two peace officers while committing the crime of robbery.  Beneficiary made due proof of death and was refused payment.  The policy's general provisions were silent as to whether such a risk was covered as to the principal amount of insurance, but said policy did contain an accidental death benefit clause which provided for payment of double the principal amount in the event of accidental death, in which particular clause it was stated:

"This accidental death benefit shall not be payable if the insured's death resulted from * * * committing an assault or felony, or any other violation of law by the insured."

Plaintiff did not seek recovery of double indemnity under said accidental death provision, but only the face amount of the policy.  Defendant's answer admitted and alleged the foregoing facts, relying on the manner of death as a defense.  The trial court sustained plaintiff's demurrer to the answer, and, defendant declining to plead further, entered judgment for plaintiff, from which defendant appeals.

The theme of defendant's argument, though divided into many subpropositions, is that it would be against public policy to permit recovery by the beneficiary where the insured has lost his life while committing a felony, even though the contract of insurance itself does not exclude such cause of death.

In approaching the solution of this question it should be noted that there is no question of fraud before us; that the pleadings do not warrant an inference that insured entered into the contract because of an intent to protect his life or beneficiary against the possible consequence of contemplated crime.

This question has been before the courts a number of times and the weight of numbers as well as reason appears to support the rule stated by Cooley in his Briefs on Insurance (2d Ed.) vol. 6, p. 5201, as follows:

"In the absence of any provision in the policy excepting such a risk, the insurer is liable, though the insured was killed while committing a felony, if it does not appear that the policy was obtained in contemplation of the commission of a felony and the consequent danger."

It is a general rule of law that new reasons for the avoidance of contracts fair on their face should not be created on the ground of public policy except where there is an urgent necessity therefor.  We see no such necessity here.  Without doubt it was within the power of the defendant to except this cause of death from the operation of death benefits, yet it did not do so.  Why should we read into its policy a provision that it did not see fit to place there itself?  It is not to be presumed that policyholders as a class, or any appreciable number of them, will go out and seek death in unlawful pursuits in order to mature their policies.  And, should we so hold, that rule would necessarily cover every violation of the Criminal Code, including those of our citizens who meet death by unwisely driving recklessly upon the highways, or in jaywalking upon the city streets, or by engaging in brawls and altercations.  There would be no good reason to draw any line of distinction between felonies and misdemeanors, and if any such line were attempted to be drawn it would be purely judicial legislation.

Suicide is probably as abhorrent to the tenets of public policy as are many other

felonies, yet according to the weight of authority public policy does not prevent recovery by the third party beneficiary in suicide cases, in the absence of express stipulation in the policy, and in the absence of a showing that the insured, at the time he took out the policy, intended to commit suicide and thereby defraud the company. See the many authorities cited at 37 C. J. 551, notes 26, 27. And while it is certain that suicide will "accelerate maturity of the policy," it is not certain that engaging in a felony will do so.

Even where there is a right to change the beneficiary, still the beneficiary last named does not derive his rights from the estate of the insured, but by reason of the contract. As was said in Seiler v. Economic Life Ass'n, 105 Iowa, 87, 74 N. W. 941, 43 L. R. A. 537 (a suicide case):

"It is not the wrongdoer who makes claim here, nor any representative whose rights are to be measured by those of the wrongdoer, but persons who acquired an interest at the time the policy was taken out, and who are not in any way responsible for the loss under it. The defendant might well have guarded against this contingency in its contract. Not having done so, we think it is now in no position to complain."

The argument advanced by plaintiff in error would be more persuasive if the rule which is contended for could be limited in its application to highwaymen and professional robbers. Unfortunately that is not possible. It would of necessity apply as completely to a paid-up policy of 20 years' standing as against the beneficiary of an ordinarily upright citizen who had lost his life while overcome by sudden active, aggressive anger toward his neighbor. Death is the thing really and actually insured against, human weaknesses and follies intervening nevertheless, and it is for protection against these very things, or their possible consequences, as well as for the result of disease or the certain termination of life from old age, for which the insured pays his premiums and the insurer computes and exacts them.

The plaintiff in error also makes this argument: that a policy containing an express provision to insure against results of lawlessness would be void as against public policy: therefore, to give the policy the same effect by implication is forbidden. The difference is that in the former kind of policy lawlessness is impliedly, from a legal viewpoint, sanctioned or encouraged,—the insured says that even if you go so far as to violate

the law we shall pay your beneficiary, while in a policy making no mention of the matter this is not so. As said by the South Carolina court in Weeks v. New York Life Ins. Co., 128 S. C. 223, 122 S. E. 586, 35 A. L. R. 1482:

"An express agreement that, in the event of death by legal execution, the insurer would pay a stipulated sum to the criminal's estate or beneficiary, might be considered to evidence a design on the part of the insured, participated in by the insurer, to free the insured from such inhibition on his will to commit crime as might otherwise exist, and, where death by legal execution has ensued, warrant the inference that the crime was to an extent superinduced by the contract. But where one takes out an ordinary life insurance policy, to be matured by death from any cause, no basis in reason or experience exists for assuming that the insured had any intent at the time of making the contract to accelerate the maturity. * * *"

Not only in insurance contracts, but in all other forms of contract, provisions could be incorporated which would invalidate them, but to say that a contract innocent of such defect is unenforceable because by inference it permits it because it is not forbidden, is peculiar reasoning. As well say that a contract to transport is unenforceable because it does not provide that the carrier will not violate the speed laws.

Pertinent here are the following observations from Weeks v. New York Life Ins. Co., supra:

"* * * The consideration having to do with the removal with temptation to, or restraint upon, crime among policyholders is not the only one with which the state is concerned. Over against the public good to be subserved by avoiding the policy contract, upon the somewhat tenuous theory that such forfeitures would tend to discourage the commission of capital crimes, is to be set the public good to be promoted by requiring payment of the insurance, to the end that creditors be protected, commercial transactions safeguarded, and dependent women and children provided with the material necessities of life. Certainly, the interest of the state in saving the dependents of an executed criminal from becoming a charge upon public charity or from having to seek a livelihood under conditions of poverty and degradation, calculated to make them an economic liability or a social and civil menace, is sufficiently obvious. It would seem equally obvious that the task of balancing considerations of that character is peculiarly within the province of the makers of the organic and statute law of a state, and that, in the absence

of a definite expression from the lawmaking power, the subject is one in regard to which no clear reason or pressing necessity exists for the courts to make the law by declaring a rule of public policy."

The fact that the Weeks Case was one involving legal execution for the commission of a felony, instead of insured's being killed at the hands of the law while committing a felony, does not change the fact that the principles legally applicable are the same. It is obvious, too, of course, that cases involving the claimed right of a beneficiary who murdered the insured are not in point. Neither are fire insurance cases where the insured has set fire to the insured property, for in such cases the insured himself collects the insurance, and the risk is not calculated as something bound to happen at all events as in the case of life insurance. A contract of fire insurance is one of indemnity, which is not the case with life insurance. For discussion of this distinction see Campbell v. Supreme Conclave, 66 N. J. L. 274, 49 A. 550, 54 L. R. A. 576; also Weeks v. New York Life Ins. Co., supra.

No good is to be gained from quoting the reasoning of a great number of cases on this point. In particular see Zurich, etc., v. Flickinger, 33 F. (2d) 853; 68 A. L. R. 161; Jordan v. Logia Suprema A. H. A., 23 Ariz. 584, 206 P. 162, 24 A. L. R. 974; 14 R. C. L. 1226.

The judgment is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and RILEY and BUSBY, JJ., concur.