**Judith K. RODOLPH, Appellant**
(Plaintiff below),

v.

**NEW YORK LIFE INSURANCE COMPANY,**
Appellee (Defendant below).

No. 3452.

Supreme Court of Wyoming.

April 5, 1966.

Robert R. Rose, Jr., and Philip F. O'Neill, Casper, for appellant.

Richard E. Day and Wehrli & Williams, Casper, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

Plaintiff below, as sole beneficiary under a policy of insurance issued by defendant upon the life of her husband, sued to recover the double indemnity provided if the insured's death was caused "directly and independently of all other causes, from accidental bodily injury."

At a pretrial conference it was determined that the sole dispute between the parties was whether the insured came to his death by accident as defined in the policy.

At the trial and immediately following plaintiff's opening statement, defendant moved the jury be instructed to return a verdict in favor of defendant on the ground that plaintiff had stated the only proof required of plaintiff was that there was a violent death, while, under the terms of the policy, it was necessary to prove that insured's death occurred directly and independently of all other causes from accidental bodily injury. After argument the court sustained the motion, whereupon plaintiff asked and was granted leave to reopen her case without, however, reserving an objection to the court's previous adverse ruling on the motion to direct.

Plaintiff herself was the only witness called in her behalf and testified upon direct, cross, redirect, recross, and a second redirect and recross examination. Following this testimony, defendant again moved for a directed verdict. The motion being granted, the jury returned its verdict accordingly and judgment was entered thereon. Plaintiff appeals.

Plaintiff's claim was founded upon the circumstances present at the time the insured met his death. To portray the scene, plaintiff, during her testimony, roughly platted the floor plan or arrangement of her mother's house in which her husband was killed. This exhibit shows the entrance to the mother's house opened into a small living room from which, to the right, was a door to a bedroom where plaintiff slept; that almost directly opposite the entrance door was a door into the kitchen; and that

to the right from the kitchen was a door opening into another bedroom.

Plaintiff's testimony was that her relationship with her deceased husband had been stormy and violent, and deceased was cruel many times; that on either July 17 or 18, 1964, she left her home in Cheyenne, because her husband had beaten her, and went to her mother's home in Evansville, Wyoming; that she filed suit for divorce after which, on July 24, her husband called her on the telephone saying if she did not return to the home in Cheyenne and bring the "kids" by 4 o'clock in the morning he would come after her, that he would burn the house and kill her, the children, and anybody else that got in his way, and she had better not have anybody there because he would kill them too; that she reported this to the police and knew that her brother was told about it and was present when her brother was told; that she had been terrified for nine years and told her brother she was terrified; that she got a .22 caliber pistol from her pickup in which she came to Casper (Evansville); that her brother got some additional shells from her mother to put in the pistol; that she would not say she had not testified at the coroner's inquest relative to the death of her husband that "we knew my husband was coming with an urge to kill"; that the night of July 24, 1964, her brother slept on the couch in the front room of the mother's house and she was wakened when she heard her brother say, "Rodolph [the husband] is here"; that her husband, the insured, came into the living room and she heard him say, "where is my old lady" and her brother say, "go home Jim, she is not going back"; that the insured came into the bedroom where she was, took her arm, and said, "you are going home with me, you better be getting dressed," and she replied, "No, Jim, I can't go home any more"; that the insured left the house; that she heard her brother using the phone and saying, "I have got to have the police immediately"; that she saw her brother drop the phone and heard him say "he is coming back," and then he ran into the bedroom which opened

from the kitchen; that she walked into the living room while her husband was still outside, but he came into the living room carrying a gun; that her brother stepped around the corner of the door leading into the bedroom off the kitchen, holding a pistol at about waist high and said to insured, "Jim, that is far enough, please go back outside," "just to please leave"; that the insured swung the butt of his gun at her brother when he was almost next to him; that she had testified at the coroner's inquest that she saw her husband with the rifle and swing it in the stomach of the brother and saw the insured pull the hammer back, and her brother had to fire; that at the inquest she had testified that when her brother stuck his arm out with the pistol, her husband went "like that" to cock the gun and went "like that" with the gun in her brother's stomach, and her brother fired and the insured fell in the doorway from the kitchen to the living room; that she testified at the inquest her husband was ready to pull the trigger "Because [he] pushed that thing back like this"; and that before the shot was fired the situation was that her husband, the insured, had the gun barrel of his gun almost in her brother's stomach, and she knew which portion of the rifle was the barrel and the end of the gun from which the bullet is discharged.

Appellant's first point is that it was error in the court's sustaining of defendant's first motion to direct a verdict. Under the issue to be decided, as determined at the pretrial conference, it was necessary that plaintiff prove not merely that the insured suffered a violent death but that his death occurred, directly and independently of all other causes, from accidental bodily injury. As plaintiff's counsel had announced in his opening statement that the only proof required was that there was a violent death, the motion was well taken and should have been granted. However, without preserving any objection or exception to this ruling of the court, the plaintiff elected to request permission to reopen her case, the court granted that request, and the case proceed-

ed to trial. Under these circumstances, there was no error as claimed by appellant.

Appellant's next point is that as the court granted defendant's further motion to direct a verdict after plaintiff had fully presented her case by her own testimony, it erred because only the testimony favorable to plaintiff, together with all reasonable inferences drawn therefrom, should have been considered by the trial court and that this was not done.

We accept the legal premise upon which this point is based, but disagree with her conclusion. We find that her own testimony, particularly that elicited upon cross interrogation, considered as favorably to her position as is possible, clearly shows the insured to have been an aggressor and to have developed and brought about a critical and dangerous situation by his own actions by making dire threats against the lives of his wife, his children, and *anybody else who got in his way,* procuring a rifle and re-entering the house "to *enforce* his wife's return with him" (emphasis supplied), as stated in appellant's brief. Her further testimony also shows that her brother unsuccessfully tried to call police, and the insured left the house, went out to his car and procured a rifle; that insured's actions caused the brother to arm himself with a pistol, and when the insured returned with the rifle the brother raised his pistol waist high and asked insured to please leave, stating his sister was not going with the insured, upon which the insured swung the butt of the rifle at her brother, cocked his rifle and thrust it in the brother's stomach, at which point the brother fired and killed the insured.

True, the record of plaintiff's testimony shows a marked reluctance to relate matter which bore upon the aggressive conduct of the insured, but, when reminded that her testimony at the inquest over the body of her husband had been definite and positive in recounting facts which definitely showed the insured was the assailant and her brother shot and killed him in self-defense when in imminent danger of being himself killed, she admitted she had so testified and finally said, in answer to a direct question, that she had seen the insured cock his rifle and thrust it into the stomach of her brother just before the insured was shot and killed.

This testimony of the plaintiff left no question of fact to be determined by the jury. The plaintiff herself established the aggressive actions of the insured which warranted the defensive action of her brother. A reasonable mind could not do otherwise than conclude the brother's firing of the pistol was an intentional act in justified defense of his person. Nor could a reasonable mind do other than conclude that the insured must have known and expected that his actions in threatening he would kill anyone who got in his way, and that his wife had better not have anybody there because he would kill them too, followed by his procuring a rifle and re-entering the house "to enforce his wife's return with him," might result in his own death. In consequence, all reasonable minds must perforce agree that his demise was not an accident but the natural result of his own doing.

As there was no disputed fact to be resolved, the direction to the jury was proper.

As we find no error, the verdict of the jury and the judgment of the trial court is affirmed.

Affirmed.