Katheryn **CARLYLE**, Appellant,

v.

**EQUITY BENEFIT LIFE INSURANCE COMPANY, Appellee.**

**No. 48575.**

Court of Appeals of Oklahoma, Division No. 1.

March 16, 1976.

Released for Publication by Order of Court of Appeals April 8, 1976.

Lewis M. Watson, Ada, for appellant.

Deaton, Gassaway & Davison, Inc. by Austin R. Deaton, Jr., Ada, for appellee.

BOX, Judge:

An appeal by Katheryn Carlyle, plaintiff in the trial court, from a judgment in favor of appellee, Equity Benefit Life Insurance Company, in an action to recover accidental death benefits.

The beneficiary under an accident insurance policy brought suit to recover the benefits payable for accidental death. The insurer defended on the ground that the insured's death was not accidental within the terms of the policy because it was the result of bullet wounds inflicted upon him while he was engaged in the commission of an armed robbery. The trial court held for the insurer and the beneficiary appealed. We affirm.

On February 8, 1974 Equity Benefit Life Insurance Company (Equity) issued an accidental death insurance policy to Harold Carlyle. The policy provided that a lump sum benefit of $2,500 would be paid to the named beneficiary in the event that Carlyle died as a direct result of an accidental bodily injury. Katheryn N. Carlyle, the insured's wife, was the beneficiary.

Only about two months after the policy had been issued, Harold Carlyle met a violent death shortly after attempting to complete a midnight robbery of a small convenience store. On April 2, 1974 Carlyle entered Wayne's Beep and Buy in Ada, Oklahoma, and handed the attendant, Mr. Young, a paper sack bearing a written demand for all of the store's money. Carlyle was brandishing a .25 caliber pistol. Young complied with this demand by filling the sack with money and handing it to Carlyle. Young was then told to lay his head down on the store counter; and after he did so Carlyle walked out of the store.

Young then quickly reached under the counter for a pistol, followed Carlyle out the door and yelled for him to stop. Carlyle still had his pistol in his hand. When he heard Young he raised his pistol and spun around toward him. Young then shot Carlyle.

Within five minutes of the shooting the police arrived and discovered evidence in Carlyle's car linking him to an armed robbery of the Quick and Easy Store that had taken place only a short time earlier. The pistol used to hold up Young was found near Carlyle's body fully loaded with a live round in the chamber, the safety off and the hammer cocked.

In May, 1974, Katheryn Carlyle filed a claim with Equity, seeking payment of the lump sum accidental death benefit. Equity refused to pay on the ground that death from injuries sustained in the commission of an armed robbery was not covered by the policy because it could in no way be considered to have been accidental. Suit was instituted on July 8, 1974 and on May 19, 1975 the trial judge rendered judgment in favor of Equity after the case had been submitted to him on an agreed statement of facts.

## I.

▉ It is common to include in accidental injury policies an exception to liability when the insured is injured or killed while violating the law. Provisions of this nature are usually held legally effective, e. g., I. A. Appleman, Insurance Law and Practice § 511 (1941); c. f. *Home State Life Ins. Co. v. Russell,* 175 Okl. 492, 53 P.2d 562 (1936), at least where the insurer proves that a violation of law in fact resulted in the insured's death. *Waters v. National Life & Acc. Ins. Co.,* 156 F.2d 470 (10th Cir. 1946). In the Equity policy here at issue, however, no such exception exists; the policy is completely silent on the matter. Hence the only possible bar to Mrs. Carlyle's recovery is the finding that her husband's death was not accidental.

The pertinent clause of the policy provides that Equity will pay a death benefit of $2,500 if the insured died "as a direct result of an accidental bodily injury sustained while this policy is in force." This is a relatively commonplace provision in an accidental injury policy. Yet the courts, when faced with the assertion that a claim for benefits is barred by the culpable conduct of the insured, have reached sharply divergent conclusions. See Annot., 43 A. L.R.3d 1120 (1972). The majority of jurisdictions deny recovery. Id. at 1124. Some are of the view that public policy requires that recovery be precluded when the insured's injury was a direct result of his own criminal conduct, e. g. *Piotrowski v. Prudential Ins. Co.,* 141 Misc. 172, 252 N.Y.S. 313 (1931), though an exception is usually made for an innocent beneficiary, e. g. *Taylor v. John Hancock Mut. Life Ins. Co.,* 9 Ill.App. 330, 132 N.E.2d 579, aff'd 11 Ill.2d 227, 142 N.E.2d 5 (1956). Oklahoma and a number of jurisdictions are contra. See *Home State Life Ins. Co. v. Russell,* supra.

Many other jurisdictions, whatever their views on the merits of the public policy issue, usually deny recovery on the ground that death is a natural or foreseeable consequence of certain law violations and that the insured who died while perpetrating a serious crime in light of this obvious risk cannot be said to have died as the result of accidental injury. E. g., *Metropolitan Life Ins. Co. v. Anglin,* 66 Ga.App. 660, 19 S.E. 2d 171 (1942) (robbery); *Wright v. Western & Southern Life Ins. Co.,* 443 S.W.2d 790 (Tex.Civ.App.1969) (robbery). A minority of courts reach a contrary conclusion and permit the insured or the beneficiary to recover. E. g., *Furr v. Metropolitan Life Ins. Co.,* 111 N.J.Super. 596, 270 A.2d 69, 43 A.L.R.3d 1115 (1970) (looting); *Mohn v. American Cas. Co.,* 458 Pa. 576, 326 A.2d 346 (1974) (burglary).

Nearly all of the courts which have decided this issue agree that an accidental injury is one that occurs unexpectedly, fortuitously—an event which could not have

been foreseen or anticipated. 10 Couch on Insurance 2d § 41:8 (1962); I. A. Appleman, supra, § 391. The split of authority on the question of whether an injury in the commission of a given crime is accidental seems to arise from the courts' varying ideas regarding the degree of foresight which should be required of the insured. Cf. R. Keeton, Insurance Law § 5.4(f) (1971). Thus the minority of courts which have labeled as accidental an injury sustained in the commission of a serious crime (such as robbery) have focused exclusively on the subjective state of mind of the insured and have contended that, from the insured's point of view death was unlikely, unforeseeable and totally unintended, e. g. *Furr v. Metropolitan Life Ins. Co.,* supra. The majority of courts, on the other hand, tend to pay less attention to the assumed mental state of the insured and evaluate the facts and circumstances from the viewpoint of a reasonable person. The conclusion usually reached is that death is just too likely, too foreseeable, too natural a consequence of a serious law violation to justify the contention that it was the result of an accident. See, e. g., *Smith v. Combined Ins. Co.,* 202 Va. 758, 120 S.E.2d 267 (1961).

## II.

Mrs. Carlyle contends that in Oklahoma a beneficiary may recover accidental death benefits unless the insured's fatal injuries are the result of his own premeditation or intent. As authority for this position she relies upon *Home State Life Ins. Co. v. Russell,* supra; *Goodwin v. Continental Casualty Co.,* 175 Okl. 469, 53 P.2d 241 (1935); and *Union Accident Co. v. Willis,* 44 Okl. 578, 145 P. 812 (1915). We think that these decisions, when considered in light of their particular facts and in the context of the many Oklahoma decisions pertaining to the issue, do not support her position.

In both *Willis* and *Goodwin* the policies at issue provided accidental death benefits in the event the insured's death was effected through "external, violent and accidental means." In both cases the Su-

preme Court allowed recovery even though the insureds died as the result of intentional acts of an assailant. The court concluded that since the insured had no part in his own death and could not have foreseen the event, death was "accidental" despite the fact that the fatal injury had its origin in the deeds of an aggressor. In *Goodwin,* as in *Willis,* the Court stressed that the insured's death was not caused by his own intentional or voluntary acts because that was a fact crucial to a finding that death was accidental within the meaning of the policy. See generally I. A. Appleman, supra, § 393. But neither case says that only intentional conduct by the insured will bar a finding of accidental death. Indeed, the Oklahoma Supreme Court has long emphasized the elements of fortuity, chance and unforeseeability in an accidental injury. In *Republic National Life Ins. Co. v. Johnson,* 317 P.2d 258, 259 (Okl.1957), for example, the Court held that "recovery under an accident insurance policy for injuries sustained by accidental means, comprehends that the means of the injuries shall be unexpected, unforeseen and involuntary." See also *Bosley v. Prudential Ins. Co.,* 192 Okl. 304, 135 P.2d 479, 481 (1943); *Prudential Ins. Co. of America v. Tidwell,* 163 Okl. 39, 21 P.2d 28 (1933).

In *Russell* the court held that a beneficiary of a life insurance policy could recover the face amount of the policy notwithstanding the fact that the insured came to his death while committing a felony. The policy at issue in *Russell* did not contain an exception for violations of law and the court was unwilling to hold under such circumstances that it would be contrary to public policy to permit recovery. *Russell* did not however, involve a claim for accidental death benefits and it was therefore unnecessary for the court to decide whether the insured's death was accidental. The only question before the court was whether it was impermissibly at odds with the public policy of Oklahoma to permit recovery by the beneficiary when the insured had died while perpetrating a crime. The *Russell* case, then, affords no support for Mrs.

Carlyle's contention that the insured's death must be occasioned by his own voluntary or intentional act in order for it to be non-accidental in nature.

### III.

We think it clear that the question of whether Harold Carlyle died an accidental death must be resolved by determining whether the fatal injury he received during the commission of an armed robbery was an unforeseeable, unusual and fortuitous happening. We do not attempt to state any hard-and-fast rules to be applied in making such a determination. Each decision of this instance must depend upon an analysis of the particular facts and circumstances. We cannot accept, however, the approach of focusing exclusively upon the assumed mental state of the insured, as do the minority of jurisdictions. Rather we think that in order to find that a death is accidental it must not have been reasonably foreseeable by the insured or by a reasonable person in his position. See *National L. & A. Ins. Co. v. Reese*, 186 Okl. 133, 96 P.2d 1058 (1939); *Prudential Ins. Co. v. Tidwell*, supra. See generally Annot., 26 A.L.R.2d 399 (1952).

Turning to the instant case, we think that the facts and circumstances weigh heavily in favor of the trial court's view that Harold Carlyle's death was not accidental. Carlyle himself probably thought that the chance of successfully completing the crime was good. Perhaps he entertained little fear of death or injury when he entered the convenience store—he had a gun in his hand and had only moments before completed a successful hold-up. And satistically the odds might have been in his favor; the likelihood of escape good.

But there is little doubt that he knew, too, that he was committing a serious and dangerous crime. There was an ever-present danger of armed resistance by the store attendant or by the police. Death may thus not have been probable but it was certainly more than unusual or unnatural; it was too natural a consequence of an armed robbery to be labeled merely a fortuitous, unusual, or unforeseeable event.

Moreover, if we focus on the conduct of Carlyle at the moment he sustained the fatal injury the conclusion that his death was not accidental seems inescapable. Carlyle did not die simply in the commission of a hold-up from which injury was foreseeable; he died in a volley of gunfire preceded by a clear warning from an armed store attendant. Rather than heed the warning, Carlyle spun around toward Young with a raised pistol as if he were about to engage in a duel. He gave Young little choice but to respond as he did. We think it obvious that as Carlyle turned to confront Young death was imminent and foreseeable.

We hold that Harold Carlyle did not die as the result of an accidental bodily injury and accordingly, affirm the judgment below.

AFFIRMED.

REYNOLDS, P. J., and ROMANG, J., concur.