ALESIA DEE INMAN BUTCHER v. NATIONWIDE LIFE INSURANCE COMPANY

No. 8117SC652

(Filed 20 April 1982)

Insurance § 46— death resulting from altercation—no entitlement to accidental death benefits

Where the insured died as a result of injuries sustained during an altercation with the plaintiff whereby the insured instigated a fight and, in the course of that fight, he obtained a kitchen knife with which he attacked the plaintiff and from which his death resulted, his death was not caused by accidental means under the terms of the insurance policy.

APPEAL by defendant from *Washington, Judge.* Judgment entered 13 February 1981, in Superior Court, SURRY County. Heard in the Court of Appeals 2 March 1982.

In September 1979, plaintiff brought suit against defendant on a life insurance policy under which plaintiff's late husband, Donald Lee Butcher, had been insured. According to her complaint, the life insurance policy provided a $10,000.00 face value, a $10,000.00 accidental death benefit, and a decreasing term rider with a commuted value of $22,410.00, as of 13 April 1978. On 13 April 1978, the insured died as a result of a laceration on the left subclavian artery which occurred during a scuffle with the plaintiff. The complaint alleged that the insurance premiums had been paid in full; that defendant had paid plaintiff, as beneficiary, the face value and the value of the decreasing term rider; but that the defendant had refused to pay the $10,000.00 accidental death benefit. Plaintiff sought the $10,000.00 plus interest from date of death.

Defendant's answer alleged that plaintiff's role in the death of the insured "was wilful, intentional, unlawful, illegal or at the very least culpably negligent" and constituted a violation of Article III of Chapter 31A of the North Carolina General Statutes. Defendant also asserted, *inter alia,* that, if the insured did not die as a result of plaintiff's misconduct, then he died as a result of his own wilful misconduct, and such death would bar any recovery by the plaintiff.

The case was tried before a jury. Through her own testimony, plaintiff offered evidence tending to show that, on the evening of 13 April 1978, at approximately 10:30, plaintiff attempted to awaken her husband, the deceased, who had fallen asleep on the couch. When awakened, the deceased followed plaintiff to the other side of the room and began hitting her on the face. Although he got on top of her, plaintiff managed to escape and run to the kitchen. The deceased followed, throwing glasses at plaintiff. Within a few minutes after plaintiff locked herself in the bathroom, the deceased jiggled the door handle and opened the door. Plaintiff's testimony continued:

> . . . he was standing there with a knife, shaking it at me and saying, "I'll teach you, you bitch. You are not running my life." I was looking at him and said, "D. L., please put the

knife down." But he kept shaking it at me and I reached up to get the knife and my left wrist was cut slightly. He was still shaking the knife and I reached up and grabbed hold of his arm and was trying to keep the knife away from me. I was pushing him back and we kept going back and forth, and blood just started, from where I do not know. It was all over him and me, and he was saying, "Get me to the doctor, quick." We left that room to the other room and he fell in the floor, and I helped him up. We got to the living room and from there to the kitchen and then out to the door to the van, but could not get the van doors open. We tried, and I ran back into the house to get the keys, and D. L. had gone around the van and fell right there in the driveway.

Plaintiff was also allowed to testify as to previous fights she had had with the deceased. On cross-examination, plaintiff testified that she had been convicted of fighting in public and of trespass.

The defendant's evidence consisted of a portion of the autopsy report on the deceased. The report stated that the object producing the wound appeared to have penetrated approximately twelve centimeters deep. Defendant also produced evidence by one of its agents (Beamer) that tended to show that plaintiff was aware of the life insurance policy of which she was the beneficiary. On rebuttal, plaintiff offered the testimony of an employee of the Surry County Sheriff's Department who had called the defendant's agent Beamer after the insured's death. According to this witness, agent Beamer at that time said "that it might be possible that she [plaintiff] did not know about the [insurance] coverage."

The trial court denied defendant's motions for a directed verdict made at the close of plaintiff's evidence and at the close of all the evidence. The case went to the jury and, to the following issue, it returned an affirmative response:

Did the death of Donald Lee Butcher result directly and independently of all other causes from bodily injury caused solely by external, violent and accidental means?

Defendant's motion for judgment notwithstanding the verdict was denied. From judgment awarding plaintiff the accidental death benefit plus interest, defendant appealed.

*Faw, Folger, Sharpe & White, by W. Thomas White and T. Richard Pardue, Jr., and Folger and Folger, by Fred Folger, Jr. and H. Lee Merritt, Jr., for plaintiff-appellee.*

*Petree, Stockton, Robinson, Vaughn, Glaze & Maready, by Grover Gray Wilson and Michael L. Robinson, for defendant-appellant.*

MARTIN (Robert M.), Judge.

The Accidental Death Benefit Rider issued on the life of Donald Butcher provided $10,000 insurance against "the death of the Insured . . . [resulting] directly and independently of all other causes from bodily injury caused solely by external, violent and accidental means." In applying the law to the uncontroverted facts of this case, we conclude that the death of the insured was not caused by accidental means and that it was not, therefore, covered by the Accidental Death Benefit Rider. Defendant's motion for a directed verdict should have been allowed.

The term "accidental means" refers to the occurrence or event which produces death and not to the death itself. *Chesson v. Insurance Co.*, 268 N.C. 98, 150 S.E. 2d 40 (1966). The word "accidental" describes the means of death. *Id.* "The motivating, operative and causal factor must be accidental in the sense that it is unusual, unforeseen and unexpected . . . .. [T]he emphasis is upon the accidental character of the causation—not upon the accidental nature of the ultimate sequence of the chain of causation." *Fletcher v. Trust Co.*, 220 N.C. 148, 150, 16 S.E. 2d 687, 688 (1941).

In *Scarborough v. Insurance Co.*, 244 N.C. 502, 94 S.E. 2d 558 (1956), the insured (Midgette) was killed as the result of an altercation with another man (Baldwin). The uncontradicted facts were that, while in Norfolk, Virginia, Midgette argued with a stranger, Baldwin, who was sitting on the porch of his home. Midgette, after cursing Baldwin and while in a state of anger, rushed up the steps toward Baldwin; Baldwin jumped to his feet and shoved Midgette back onto a dirt sidewalk. Midgette's head, however, struck the metal water meter which caused injuries resulting in Midgette's death ten days later. There was no question but that the insured was the aggressor. The Court stated with approval the following principle from 45 C.J.S., Insurance, § 753, p. 779:

Where the policy insures against loss of life through accidental means, the principle seems generally upheld that if the death of the insured, although in a sense unforeseen and unexpected, results directly from the insured's voluntary act and aggressive misconduct, or where the insured culpably provokes the act which causes the injury and death, it is not death by accidental means, even though the result may be such as to constitute an accidental injury.

*Id.* at 505, 94 S.E. 2d at 561. The court concluded that "the character and the extent of the insured's aggression under the circumstances . . . are such as to exclude the concept of death by accidental means within the meaning of the policy." *Id.* at 506, 94 S.E. 2d at 561.

Likewise, in another case involving the insured's aggressive conduct, *Clay v. Insurance Co.*, 174 N.C. 642, 94 S.E. 289 (1917), the Supreme Court interpreted a similar "accidental means" clause in a life insurance policy to invoke the test of "whether the insured, being in the wrong, was the aggressor, under circumstances that would render homicide likely as the result of his own misconduct." *Id.* at 693, 94 S.E. at 290. The court adopted the proposition that where a person voluntarily invites another to a " 'deadly encounter . . ., his death, if he sustains a mortal wound, cannot be regarded as accidental by any definition of that term which has been heretofore adopted.' " *Id.* at 693, 94 S.E. at 290, quoting from *Taliaferro v. Travelers' Protective Ass'n.*, 80 Fed. 368, 370 (1897). In *Clay*, it appeared that the insured, after announcing that he would kill his adversary, first wrongfully assaulted him with a pea pole, three or four feet long, "a deadly weapon," and then pursued the fight with a pistol. The insured was shot and killed by his adversary. The Supreme Court concluded that "[s]uch a homicide could in no sense be called accidental; but on the facts as they are now presented the death of one or both of the parties was not unlikely, and that of the insured was fully justified under the law." 174 N.C. at 694, 94 S.E. at 290. While the Court ordered a new trial, it also directed that, if the facts in evidence were as presented by the appeal, the trial court should instruct the jury to return a verdict for the defendant.

In the present case, the insured died as a result of injuries sustained during an altercation with the plaintiff. The evidence

showed that the insured instigated the fight and that, in the course of the fight, he obtained a kitchen knife with which he attacked the plaintiff. His death resulted from a wound caused by the knife. Under North Carolina law, this was not a death by accidental means, and the beneficiary of the accidental means insurance rider was not entitled to recover thereunder.

In attempting to prevent this result, the plaintiff has argued the case of *Logan v. Insurance Co.*, 46 N.C. App. 629, 265 S.E. 2d 447, *disc. review denied*, 301 N.C. 93, --- S.E. 2d --- (1980). That case involved a life insurance policy with language different from the language we find in the policy in this case, and it is not, therefore, controlling.

The defendant's motion for a directed verdict should have been allowed. The case is reversed.

Reversed.

Judges MARTIN (Harry C.) and WHICHARD concur.