ADAMS, Justice.
Virginia Howard sued Southern Life and Health Insurance Company (hereinafter Southern) to collect the proceeds of a life insurance policy on the life of Alonzo McNeal, which policy named her as beneficiary. Southern defended by denying that McNeal met his death by “accidental bodily injury” as required by the policy. Summary judgment was granted in favor of Southern based upon the pleadings, the deposition of Howard, and her answers to interrogatories. Howard appeals.
The issue raised by this appeal is whether the trial court could conclude that as a matter of law McNeal’s death was not accidental. If there is any evidence giving rise to a reasonable inference that McNeal could not have reasonably anticipated that he would be killed, then his death cannot be considered nonaccidental as a matter of law. We hold that there is such evidence, and, therefore, that the summary judgment was improper.
The following facts are found in the record:
Virginia Howard and Alonzo McNeal lived together for approximately three years. They had two children. McNeal took out an accidental death policy with Southern and named Howard as the beneficiary. The policy provided as follows:
Upon receipt of due proof that the Insured, during the continuance of this policy, has sustained accidental drowning or accidental bodily injury, visible on the exterior of the body or disclosed by autopsy, which directly and independently of all other causes results within 90 days of its occurrence in the death of the Insured, the Company will pay the Principal Sum to the beneficiary named in the Schedule.
The premiums on the policy were paid by both Howard and McNeal. There is evidently no dispute that the policy was in effect and the benefits due to be paid, provided that McNeal died by accidental bodily injury.
In early October 1982, Howard and McNeal separated. Several instances of violence occurred during this separation. On October 7, McNeal attacked Howard with a knife and cut her across the stomach. On October 10, McNeal chased Howard around the yard on a motorcycle, apparently trying to run over her. On October 11, McNeal again attacked Howard with a knife. On this occasion, Howard armed herself with a pistol and fired shots, hitting McNeal in the leg. He then departed.
McNeal returned later, early in the morning of October 12, having had a telephone conversation with Howard which was “normal” in some respects and during which reconciliation was discussed, but which ended with Howard hanging up on McNeal and taking the phone off the hook. Upon his return, Howard again picked up her pistol, and the two argued. Ultimately, Howard was standing on the porch of a neighbor’s house, when McNeal approached her from behind wielding a knife. She had already fired unaimed shots during this confrontation, and when McNeal approached on the porch, Howard jumped away and fired again. McNeal was shot and killed.
This Court has addressed the meaning of “accidental death” in several cases. In O’Bar v. Southern Life & Health Ins. Co., 232 Ala. 459, 168 So. 580 (1936), the law in this area was summarized in this way:
The rule is that when insured is the aggressor, especially with a deadly weapon, and makes such an attack on another as would naturally invite a deadly encounter in resistance of his attack, and *1111 as the probable consequence of it, and he is killed by the other while so resisting him, it cannot be regarded as an accidental death, since he voluntarily put his life at stake and deliberately took the chances of getting killed....
In some cases it appears that insured had knowledge that his opponent was armed with a deadly weapon when he began the attack, and their statement of the rule is upon that hypothesis....
But other cases hold that such knowledge is not necessary for him to be chargeable as for voluntarily bringing on his death, if his conduct toward his slayer was such as to invite resistance to the death....
To constitute an accidental death, it must have resulted from something unforeseen, unexpected, and unusual, ... or “which happens as by chance, or which does not take place according to the usual course of things,” or “without foresight or expectation” or “by reason of some violence, casualty, or vis major to the assured, without his design or consent or voluntary cooperation.” _
[Emphasis added.]
232 Ala. at 462, 168 So. at 582. The O’Bar decision affirmed a ruling of a trial court which had directed a verdict for the insurer on the issue of whether the insured’s death was accidental. The insured had attacked a one-armed person, fired a shot at him, beat and kicked him and threatened to kill him, until the victim of the assault pulled a knife and killed the insured. On the basis of the above-excerpted principles of law, the Court held that
the only interpretation of this evidence is that insured brought about a condition from which his death was not to be unforeseen or unexpected nor an unusual result of it. He put his life at stake heedless of the consequences which should have been anticipated.
232 Ala. at 462, 168 So. at 582-83. The Court obviously determined from the record that there was no evidence at all to support a theory that the insured did not foresee or expect his death.
In Aetna Life Insurance Company v. Beasley, 272 Ala. 153, 130 So.2d 178 (1961), the Court again addressed this issue. In that case, the insured was shot and killed by his fourteen-year-old son during a fight between the insured and his wife. Even though the insured was the antagonist, the Court affirmed the judgment based on a verdict against the insurance company. The Court noted as follows:
The appellant contends that because the insured was the aggressor in the instant situation the insurer is not liable. The general rule is stated in 45 C.J.S. Insurance § 788, p. 827, and is quoted by the Court of Appeals in United Security Life Insurance Company v. Clark, 40 Ala. App. 542, 115 So.2d 911, 914:
“If insured is innocent of aggression or wrongdoing, and is killed or injured in an encounter with another, his death or injury is accidental, or is caused by accidental means, within the policy, as where he is injured while defending himself against an unprovoked assault; and even though he is the aggressor, if he could not reasonably anticipate that his acts or course of action would result in death or bodily 'injury at the hands of this antagonist, insurer may be held liable.”
272 Ala. at 156. 130 So.2d at 181 (emphasis added). The Aetna Court went on to quote the following from Mutual Life Ins. Co. of New York v. Sargent, 51 F.2d 4 (5th Cir.1931):
“If, however, defendant makes proof that the death occurred as the result of an affray or an encounter, then it is incumbent upon the deceased (this should read “plaintiff”) to take the initiative again and show by other evidence that the death was accidental. [Citing cases]. And this can be accomplished by showing that the insured was not the aggressor or if he was the aggressor, that he could not in the circumstances reasonably have anticipated that he would be killed. [Citing cases]. In each case if there is any issue of fact as to how the matter occurred, and as to what ought *1112 to have reasonably been expected as likely to ensue, the matter is for the jury. [Citing cases].”
272 Ala. at 157, 130 So.2d at 181. (Emphasis added.) Given the above principles of law, the Court in Aetna concluded by saying: ’
We cannot say as a matter of law that the husband, although intoxicated and beligerent, intended to kill his wife and son, or that the natural and probable consequence of his actions was that his son, who had never physically resisted or reacted to his father’s threats and abuses toward his mother, would turn upon his father and kill him when he again threatened and assaulted his wife.
272 Ala. at 157, 130 So.2d at 182.
Similarly, in Provident Life and Accident Insurance Company v. Hanna, 294 Ala. 37, 311 So.2d 294 (1975), this Court affirmed a judgment against the insurer in a case in which the insured was shot and killed by his wife during a fight. The Court distinguished O’Bar, as a case in which the evidence was uncontradicted, and then relied on Aetna, saying as follows:
Here, as in Aetna, we cannot say as a matter of law that the death was not accidental. There was evidence to support a finding that Mrs. Hanna killed her husband in self-defense, or that the gun went off accidentally, or that she intended to kill him. The issue of whether the death was accidental must be determined according to the accepted view “that an accident is an occurrence that is not to be expected or anticipated in the light of common experience and of the existing circumstances,” and such determination is made from the standpoint of the insured.
“... The fact that the beneficiary kills the insured in what the former supposes is self-defense does not mean that the killing is not an ‘accident’ within the meaning of the [policy] provision, unless it appears that the insured must have known, or at least have anticipated, that because of his conduct the beneficiary would in all probability kill him.” 44 Am.Jur.2d, Insurance, § 1742.
294 Ala. at 41, 311 So.2d at 297. Therefore, in Provident, as in Aetna, the Court looked beyond the mere fact that the insured was the aggressor, and examined the evidence for reasonable inferences that the insured did not know or anticipate that he would be killed. Since the evidence was susceptible to such inferences, those cases were affirmed.
In the present case, the trial court’s summary judgment in favor of the insurer amounted to a finding, as a matter of law, that there was no way a jury could infer that McNeal did not anticipate he would be killed. After a review of the record, we hold that the evidence is susceptible to conflicting inferences of fact as to whether McNeal reasonably anticipated that he would be killed. Therefore, it is for a trier of fact to determine this issue, and summary judgment was improper.
There is evidence in this case that prior to the night of McNeal’s death, Howard had never physically resisted any assault by McNeal. There is certainly no indication that she had ever pulled a gun on him before, much less fired shots at him. In this respect, this case is much like Aetna, supra. An inference which could be reasonably drawn from this evidence is that McNeal might reasonably have anticipated Howard would not resist him on this occasion. Even when she pulled the gun out, given her prior passivity, McNeal may have reasonably anticipated that Howard would not shoot him.
Additionally, there is evidence that Howard and McNeal had a “normal” telephone conversation prior to his return to the house on the night he was killed. During this conversation, the couple discussed reconciliation. It could be reasonably inferred that McNeal anticipated reconciling with Howard, and did not anticipate being killed by her, even though she had a gun. Also, Howard testified that her gunshots were not aimed at McNeal, but were designed to frighten him away. If he realized this, it could be inferred that McNeal did not ex *1113 pect Howard to actually hit him with a bullet. We also note that the mere fact that McNeal, armed with only a knife, pursued Howard, armed with a pistol, would support an inference that he did not expect her to fire a shot that would cause his death.
Although we admit that this is a very close ease, we are bound by the scintilla rule to reverse the summary judgment entered below. As in Aetna and Provident, supra, the trial court cannot say as a matter of law that McNeal’s death was not accidental.
For these reasons, the judgment of the Circuit Court of Mobile County is reversed and this cause is remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, JONES and ALMON, JJ., concur.