842 P.2d 1340

**VALLEY DENTAL ASSOCIATION, P.C., an Arizona corporation; Amalgamated Investment Resources, an Arizona partnership, Plaintiffs-Appellees,**

v.

**The GREAT-WEST LIFE ASSURANCE COMPANY, a foreign corporation, Defendant-Appellant.**

**No. 1 CA-CV 90-315.**

Court of Appeals of Arizona, Division 1, Department A.

July 30, 1992.

As Corrected July 31, 1992.

Review Denied Jan. 20, 1993.

Wachtel, Biehn & Malm by Denis R. Malm, Lake Havasu City, for plaintiffs-appellees.

Sorenson & Moore by Timothy W. Evens, Phoenix, for defendant-appellant.

## OPINION

EHRLICH, Judge.

The issue presented in this case is whether Gregory S. Christensen's death was "accidental" for purposes of his beneficiaries' recovery under the double indemnity portion of a life insurance policy. We hold that his death was not an accident and therefore reverse the summary judgment granted to the beneficiaries.

## I. FACTS AND PROCEDURAL HISTORY

### A. The Insurance Policy

The Great–West Life Assurance Company ("Great–West") issued a group insurance policy to the American Dental Society, of which Christensen was a member. Named as the beneficiaries of the policy issued on Christensen's life were Valley Dental Association and Amalgamated Investment Resources ("the beneficiaries"). The policy amount was $350,000, with a provision for double indemnity in case of accidental death. The accidental death provision read:

If a Member sustains bodily injury which:

(1) is caused solely by accidental means; and

(2) is sustained while he is insured under the Group Policy; and

(3) results in his death;

then the Company will pay an additional amount of insurance. Payment will be made only if death:

    (a) occurs within 90 days after the accident;

    (b) is a direct result of an accident; and

    (c) is unrelated to any other cause.

The word "accident" is undefined.

### B. Christensen's Death

The material facts are undisputed for purposes of this appeal. On September 27, 1987, Christensen picked up a 15–year–old female hitchhiker. After starting to take the girl in her intended direction, Christensen drove the car off the road in a remote area. He forced the girl at knife-point to perform oral sex on him and sexually assaulted her. He then grabbed her throat, announced "I have to kill you" and began choking her. The girl resisted and, in the struggle, they both fell out of the car, onto the ground. She grabbed the knife, but Christensen knocked it from her hand. He then got on top of her and placed both hands around her throat, choking her as he banged her head against the ground. She managed to kick Christensen in the face, knocking off his glasses. As he turned to get his glasses, the girl again picked up the knife. Christensen, having retrieved his glasses, approached the girl. She stabbed him in the leg. He backed away and the girl escaped. Christensen, whose left femoral artery had been severed, bled to death at the scene.

### C. The Insurance Claim

Following Christensen's death, the beneficiaries filed a claim with Great–West, seeking the death benefit of $350,000 plus the additional $350,000 accidental death benefit. Great–West paid the death benefit but denied the accidental death benefit, as-

serting that the death was not an accident. The beneficiaries then filed this suit under breach of contract and bad faith theories. On cross-motions for summary judgment, the trial court awarded the beneficiaries judgment on the breach of contract claim and awarded Great–West summary judgment on the bad-faith claim.

Great–West appealed.[1] The interpretation of the insurance contract is a question of law for this court to decide independently of the conclusions of the trial court. *Thomas v. Liberty Mutual Insurance Co.,* 173 Ariz. 322, 334, 842 P.2d 1335, 1337 (App.1992).

## II.  DISCUSSION

The insurance policy states that extra benefits will be paid if the insured dies of "accidental means." In *Landress v. Phoenix Mutual Life Insurance Co.,* 291 U.S. 491, 497, 54 S.Ct. 461, 463, 78 L.Ed. 934 (1934), the Supreme Court held that, in such a policy, the mechanism or action causing the injury or death must have been accidental; it is not enough that the result was accidental or unintended.

Justice Cardozo dissented in *Landress,* decrying the court's distinction between means and results. 291 U.S. at 498–501, 54 S.Ct. at 463–464. In *Knight v. Metropolitan Life Insurance Co.,* 103 Ariz. 100, 103–04, 437 P.2d 416, 419–20 (1968), our supreme court adopted the dissent:

> In an oft-quoted dissent which has now become the majority rule throughout the states, Justice Cardozo said:
>
> > "The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog. Probably it is true to say that in the strictest sense and dealing with the region of physical nature there is no such thing as an accident. On the other hand, the average man is convinced that there is, and so certainly is the man who takes out a policy of accident insurance.... When a man has died in such a way that his death is spoken of as an acci-

dent, he has died because of an accident, and hence by accidental means. If there was no accident in the means, there was none in the result, for the two were inseparable. There was an accident throughout, or there was no accident at all." [Citation omitted.]

> > \*   \*   \*   \*   \*   \*
>
> [W]e are going to clarify our position and determine along with the growing majority rule that an accident is an accident whether it be in the "means" or the "result." [Footnote omitted.]

Knight died following a dive from the top of Coolidge Dam. An experienced diver, who indeed had jumped from this dam before, he nonetheless seemingly misjudged the distance and rolled onto his back from a swan dive before hitting the water. The court, after discussing the "average man" approach taken by Justice Cardozo in *Landress,* held that this was an accident, stating:

> One paying the premium for a policy which insures against "death by accidental means" ... *intends to insure against the fortuitous, the unintentional, and the unexpected, that which happens through mishap, mischance or misjudgment.* When he pays that premium month after month he does not intend that any act committed by him, no matter how daring, reckless or foolhardy, be adjudged by a court under "reasonable man tests" or "natural and probable consequence" standards to deprive his beneficiary of contractual rights arising out of his unintended and unexpected and, therefore, accidental death. [Emphasis added.]
>
> The term "accidental means" as used in this policy should not be construed in a technical sense but should be given its ordinary and popular meaning according to common speech and usage and the understanding of the average man. [Citation omitted.]

103 Ariz. at 104, 437 P.2d at 420.

In urging that the "ordinary and popular meaning" be applied to the term "accident"

---

1. A cross-appeal was dismissed as untimely.

in determining whether a death is covered by the accidental death provision of a policy, the court in *Knight* again acted in consonance with the then-growing majority of jurisdictions in applying the common understanding of "accident" as an event that is at least unexpected. *E.g., Howard v. Southern Life & Health Ins. Co.*, 474 So.2d 1109, 1110–11 (Ala.1985); *Roque v. Nationwide Mutual Insurance Co.*, 502 Pa. 615, 467 A.2d 1128, 1129 (1983); *Hoffman v. Life Insurance Co. of North America*, 669 P.2d 410, 415–17 (Utah 1983); *Butcher v. Nationwide Life Insurance*, 56 N.C.App. 776, 290 S.E.2d 373, *rev. denied*, 306 N.C. 382, 294 S.E.2d 206 (1982); *Wall v. Pennsylvania Life Ins. Co.*, 274 N.W.2d 208, 216 (N.D.1979); *Braley v. American Home Assur. Co.*, 354 So.2d 904, 907 (Fla. App.), *cert. denied*, 359 So.2d 1210 (Fla. 1978); *Carlyle v. Equity Benefit Life Insurance Co.*, 551 P.2d 663, 667 (Okla.App.1976); *Ritchie v. John Hancock Mut. Life Ins. Co.*, 521 S.W.2d 367, 368 (Tex.Civ.App.1975); *Henry v. Metropolitan Life Insurance Co.*, 70 Ill.App.2d 132, 217 N.E.2d 482, 486 (1966); *Perringer v. Metropolitan Life Insurance Co.*, 241 Mo. App. 521, 244 S.W.2d 607, 617 (1951); *Green v. Metropolitan Life Insurance Co.*, 67 Ga.App. 520, 21 S.E.2d 465, 469 (1942); *Meister v. General Accident Fire & Assurance Corp.*, 92 Or. 96, 179 P. 913, 915–16 (1919); Annot., 49 A.L.R.3d 673 (1973); Annot., 26 A.L.R.2d 399 (1952); 10 *Couch on Insurance* 2d (rev. ed. 1982), §§ 41:7, 41:8; 1A *Appleman Insurance Law and Practice* (1981), § 360. *See Random House Dictionary* (unabridged 2d ed. 1987); *Webster's New Universal Unabridged Dictionary* (2d ed. 1983); *American Heritage Dictionary* (1975 ed.). As applied to an insured such as Christensen,

> [t]he general rule to be gleaned from the cases is that if the insured threatens to kill, or inflict serious bodily injury on, another person or assaults another person under circumstances making it likely the other person will respond with deadly

force, and does so and kills the insured, the insured's death is not accidental.

*Hoffman*, 669 P.2d at 417. *See e.g., Howard*, 474 So.2d at 1111; *Cockrell v. Life Ins. Co.*, 692 F.2d 1164, 1168 (8th Cir.1982); *James v. Aetna Life Ins. Co.*, 161 Ga.App. 64, 289 S.E.2d 290, 291 (1982); *Butcher*, 290 S.E.2d at 375–76; *Byrd v. Life Ins. Co.*, 219 Va. 824, 252 S.E.2d 307, 310 (1979); *Rodolph v. New York Life Ins. Co.*, 412 P.2d 610, 611–12 (Wyo.1966); *Henry*, 217 N.E.2d at 486; *Perringer*, 244 S.W.2d at 617; *Meister*, 179 P. at 916; Annot., 26 A.L.R.2d at 402; *Couch on Insurance*, § 41:204 at 300 ("essential" to coverage that insured not have provoked act). When there have been differing interpretations, the division "seems to arise from the courts' varying ideas regarding the degree of foresight which should be required of the insured. *Cf.* R. Keeton, *Insurance Law* § 5.4(f) (1971)." *Carlyle*, 551 P.2d at 666. The court in *Knight*, by referring to "the understanding of the average man," sought to strike a balance between focusing exclusively on the insured and the subjective state of mind that cannot comprehend death and the artificial "reasonable man" who would declare not an accident any "daring, reckless or foolhardy" act. 103 Ariz. at 104, 437 P.2d at 420.

Here, by any definition, Christensen's death was not an accident.[2] He created a situation in which another person had to fight for her life in order to survive. It was he who was armed with a knife and the intent to kill and, as was certain, the victim struggled against death and seized the weapon to defend herself. Christensen's resulting death cannot be classified as "fortuitous" or "unexpected," or as having occurred through "mishap, mischance or misjudgment." *Knight*, 103 Ariz. at 104, 437 P.2d at 420.

If there was no accident in the means, there was none in the result, for the two were inseparable. There was an accident throughout, or there was no accident at all.

---

2. We are not in this opinion creating a criminal act exclusion in Christensen's insurance policy. It is for the insurance company, and not the court, to write its policy and the fact that an insured was engaged in criminal conduct does not in every case preclude a finding that a death or injury was accidental. *Roque*, 467 A.2d at 1129; *Hoffman*, 669 P.2d at 417.

*Id.* at 103, 437 P.2d at 419 (quoting *Landress*, 291 U.S. at 501, 54 S.Ct. at 464 (Cardozo, J., dissenting)).

Accordingly, Great–West need not pay accidental death benefits under the policy.

## III. ATTORNEYS' FEES

Great–West's request for attorneys' fees pursuant to Ariz.Rev.Stat.Ann. section 12–341.01(A) is granted upon its compliance with Arizona Rule of Civil Appellate Procedure 21(a).

## IV. CONCLUSION

The judgment in favor of the beneficiaries is reversed. The case is remanded to the trial court for further proceedings.

CONTRERAS and VOSS, JJ., concur.