104 N.J. Super. 429 (1969)
250 A.2d 168
BERNARD J. DOOLEY, PLAINTIFF,
v.
METROPOLITAN LIFE INSURANCE COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided February 10, 1969.
*430 Mr. S. Victor DeLucia for plaintiff (Messrs. Smith and Clayton, attorneys).
Mr. John L. McGoldrick argued the cause for defendant (Messrs. McCarter & English, attorneys).
*431 SIMPSON, J.C.C. (temporarily assigned).
At about midnight, May 19-20, 1967, James Hanley parked his 1967 Mustang in front of a store he operated in Greenwood Lake, New York. He left the keys in the car; when he returned after picking up a package from the store his car was gone. A few minutes later a "file 1" police radio broadcast alerted all patrol cars, and within seconds Patrolmen Lyons and Schaefer spotted the car going south on Jersey Avenue. The police car pulled directly behind the Mustang and put on its dome light, but the Mustang pulled around several preceding cars and "took off." The ensuing pursuit, at high speeds with dome light flashing and siren wailing, ended a few minutes and miles later, about a mile and a half from the New Jersey border. Thomas Dooley, operating the Mustang without the owner's permission, failed to negotiate a curve, lost control of the vehicle, ran off the roadway and struck a pole, sustaining serious injuries resulting in his death an hour later. At the crash site and before Dooley, age 20, was taken to a hospital  and while he was unconscious  a police captain "advised him of his rights and told him he was under arrest for grand larceny."
Plaintiff, as beneficiary, collected the face amount of life insurance under a policy issued by defendant to his son, and sues for the double indemnity benefit payable on proof of death "as the result, directly and independently of all other causes, of bodily injury caused solely by external, violent and accidental means." Defendant refuses to pay the "additional indemnity benefit", (1) denying that the death was the result of accidental means since it was the foreseeable, natural and probable consequence of decedent's actions, and (2) asserting that public policy precludes recovery, even in the absence of a "violation of law" exclusionary clause, since death resulted from the commission of a crime.
With respect to (1) plaintiff relies upon Schwartz v. John Hancock Mut. Life Ins. Co., 96 N.J. Super. 520 (Law Div. 1967), affirmed 99 N.J. Super. 223 (App. Div. 1968), certification denied 51 N.J. 393 (1968), and as to (2) he *432 relies upon the absence of a specific applicable exclusionary clause and contends that there is no New Jersey public policy precluding recovery under the facts which he contends, at most prove guilt of "joyriding" rather than larceny.

I
The facts of this case are similar to those in Schwartz, supra, except that here Dooley operated the Mustang without the owner's permission. There is no significant difference in the "accidental means" clauses of the policies, but in Schwartz there was an exclusion for death resulting from "participation in an assault or a felony" while Dooley's policy exclusion was where death "results from committing an assault." Defendant does not contend that Dooley's conduct was an assault within this exclusion. Decedent and the beneficiary resided in New Jersey, the policy was issued in this State, and it is unquestioned that in construing the policy clauses the law of New Jersey applies. Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 491-492 (1961). Such construction should be liberal rather than literal, as aptly summarized by Justice Jacobs in Kievit, supra:
"When members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They should not be subjected to technical encumbrances or to hidden pitfalls and their policies should be construed liberally in their favor to the end that coverage is afforded `to the full extent that any fair interpretation will allow' [citations omitted]." (at p. 482)
Just as in Schwartz, the policy here contains no exclusion for unnecessary, voluntary exposure to danger, so that defendant's reliance upon the accidental means clause is misplaced. The crash, which was the proximate cause of the injuries and death, resulted from failure to negotiate a curve in the road, which was an unexpected, unforeseen and unusual extent constituting accidental means under settled New Jersey law. Furthermore, for insurance contract purposes, *433 an insured is not deemed to intend all the probable or foreseeable consequences of his conduct, and recovery is only precluded where there is a reasonable basis for his belief that his conduct makes serious injury or death a virtual certainty. Schwartz, supra, at page 530. In this case, it is reasonable to conclude that Dooley believed his conduct would result in escape or apprehension, but not that he expected serious injury or death.

II
The effect of decedent's conduct, as constituting a "violation of law" in the absence of a specific policy exclusion and in the context presented, does not appear to have been previously considered in this State. The case law in other jurisdictions appears to be about evenly divided. Annotation, "Liability under life or accident policy not containing a `violation of law' clause, for death or injury resulting from violation of law by insured", 23 A.L.R.2d 1105 (1952). Generally, where there is such a policy exclusion, traffic violations have been held to be within a "violation of law" clause, but some cases hold to the contrary. See Annotation, "Traffic violation as violation of law within provision of life or accident insurance policy or certificate excepting death or injury due to violation of law", 125 A.L.R. 1104 (1940). Absent an exclusionary clause, most of the cases denying recovery assert a public policy to avoid encouragement of criminal activity. Those allowing recovery usually find insufficient culpability by the insured, or reason that innocent beneficiaries or creditors should not be deprived of the proceeds because of the insured's conduct. Obviously, a balancing of competing interests is involved, but in the case presented the burden of persuasion is upon the insurer, since it had the power and did not provide a policy exclusion.
At the time of the occurrence, New Jersey had statutes under which decedent's conduct might be found to constitute a traffic violation, violation of the Disorderly *434 Persons Act, or one or more misdemeanors or high misdemeanors. Thus the conduct may have violated any number of provisions of our Traffic Act, such as speeding and reckless driving. It also may have been the disorderly persons offense of unlawful taking of a motor vehicle (N.J.S. 2A:170-38) often referred to as "joy-riding." Even more serious, if the requisite "intent" were found, inferred or presumed, decedent, had he lived, might have been guilty of larceny (N.J.S. 2A:119-2), receiving stolen property (N.J.S. 2A:139-1), or receiving a stolen motor vehicle (N.J.S. 2A:139-3). Since it is not disputed that New York had somewhat similar statutes at the time, decedent's conduct under the law of the lex loci delicti might likewise be characterized as a traffic violation, disorderly persons offense, or criminal offense. Under our center of gravity and grouping of contacts choice of law doctrine, Mellk v. Sarahson, 49 N.J. 226 (1967); Mullane v. Stavola, 101 N.J. Super. 184 (Law Div. 1968), New Jersey law would be applicable if there was a conflict in characterization of the conduct, since our law is most relevant in determining whether of not a New Jersey beneficiary can recover under a New Jersey contract. New York's interest terminated with recovery of the vehicle and the death of Thomas Dooley.
The problem, of course, is not to determine if Dooley was "guilty" of one or more of the statutory violations ranging from a relatively minor traffc offense to a high misdemeanor, for that could unfairly amount to a posthumous conviction without any of the traditional protections accorded an accused. Instead, since there was no policy exclusion, there must be a recovery unless defendant has proved, by a preponderance of the evidence, such conduct by decedent as to deny double indemnity benefits on some overriding public policy basis. Since the insurer has paid the ordinary life insurance benefit, it follows that there is no assertion of a public policy requiring such forfeiture, even though the death occurred while decedent was committing a violation of law. No reason appears why the public policy considerations *435 should be different as to the ordinary and accidental death benefits.
Judgment for plaintiff.