292 So.2d 476

**INSURANCE COMPANY OF NORTH AMERICA, a corporation**

v.

**Dalton F. SOUTHERN.**
**Civ. 230.**

Court of Civil Appeals of Alabama.

Jan. 30, 1974.

Rehearing Denied Feb. 27, 1974.

**358**

Almon, McAlister & Ashe, Sheffield, for appellant.

John D. Clement, Jr. and James E. Smith, III, Tuscumbia, for appellee.

BRADLEY, Judge.

Appellee-plaintiff filed an action against appellant-defendant in the Circuit Court of Colbert County based on an accidental death policy of insurance covering his son who was killed in an affray. Appellant-defendant filed a plea of the general issue and several special pleas, the gist of which was that deceased did not die by "accidental means" as provided in the policy of insurance which was the subject of the suit. After a trial, verdict and judgment was rendered in favor of appellee for $5,500, the face amount of the policy plus interest. The motion for new trial was overruled and this appeal resulted.

The principal contention of appellant is that it is entitled to a new trial on the grounds that the verdict is contrary to the preponderance of the evidence and that it was due the general affirmative charge without hypothesis.

The appellee testified that he had an accident insurance policy issued by appellant insuring the life of his son, David N. Southern, and that his son died while so covered. After the policy was introduced into evidence, the appellee rested. This was the appellee's case. The appellant introduced the testimony of two eye-witnesses to the affray, who were the only witnesses testifying about the encounter.

Thomas White, a brother of Edward Bivins, testified that he and Edward Biv-

ins went to Burt's & Mac's Cafe in Shef-field, Alabama on the night of August 29, 1971, and upon entering a back room of the cafe, David N. Southern shoved Bivins, and a tussle ensued. Two friends of Southern opened knives and Bivins released Southern. Bivins drew a pistol and said to the three of them, "I'm not going to let you cut me." At the time Bivins made this statement, Southern also had a knife in his hand. The manager of the cafe intervened at this point and ordered all of them out of the place. Southern and his two friends left first. Bivins and White left in about three or four minutes. White stated that he was following Bivins out the front door and was about two or three steps behind him. He said that as Bivins stepped outside, Southern attacked him from the right of the doorway going outside. White said Southern grabbed Bivins by the collar with one hand and made stabbing motions at him with the other. White said Southern had a knife in that hand. White said they started tussling and Southern used his free hand to grab the jacket pocket from whence Bivins had drawn his gun while they were inside. White said Bivins did not have a gun in his hand when they went outside. When Bivins and Southern reached the edge of the street, Bivins pulled his pistol and fired twice, and Southern fell mortally wounded. White stated that he did not see Bivins get cut, but that Bivins had a cut on his neck with fresh blood on his jacket.

Don Montgomery testified that on the night in question he was walking toward Burt's & Mac's Cafe, and when he was about fifty feet from the cafe, he saw Bivins come out of the cafe and Southern attack him. Montgomery stated that Southern grabbed for a pocket of the jacket worn by Bivins and with the other hand was making stabbing motions at Bivins. Montgomery said he did not see a knife in Southern's hand nor did he see a knife or gun in Bivins' hands when he came through the door. He stated that when the fight reached the street, two shots were fired and Southern fell. Montgomery stated that Bivins had a cut on his neck, a cut on his jacket and fresh blood on it. He also stated that after the shooting he saw one of Southern's friends throw a Coke bottle at Bivins but could not say if the bottle hit Bivins.

In support of its contentions, appellant relies heavily on the case of O'Bar v. Southern Life & Health Ins. Co., 232 Ala. 459, 168 So. 580. In that case the Supreme Court said:

" . . . All the evidence was introduced by plaintiff, and was without conflict. It was that insured made a deadly attack on one Magwood at the latter's home, without provocation, when he shot at Magwood with a pistol, and when it failed to fire again he beat him with it, knocking him down and kicking and beating him in a most savage and ferocious manner, threatening to kill him, while Magwood was pleading with him not to do it, and finally while insured was down on him, Magwood, who had only one arm, pulled his knife, opened it, and cut insured in the chest, from which wound he died later.

"The rule is that when insured is the aggressor, especially with a deadly weapon, and makes such an attack on another as would naturally invite a deadly encounter in resistance of his attack, and as the probable consequence of it, and he is killed by the other while so resisting him, it cannot be regarded as an accidental death, since he voluntarily put his life at stake and deliberately took the chances of getting killed. [Citations omitted.]

"In some cases it appears that insured had knowledge that his opponent was armed with a deadly weapon when he began the attack, and their statement of the rule is upon that hypothesis. [Citations omitted.]

"But other cases hold that such knowledge is not necessary for him to be

chargeable as for voluntarily bringing on his death, if his conduct toward his slayer was such as to invite resistance to the death. [Citations omitted.]

"To constitute an accidental death, it must have resulted from something unforeseen, unexpected, and unusual. Carroll v. Fidelity, etc., Co., [137 F. 1012] or 'which happens as by chance, or which does not take place according to the usual course of things,' or 'without foresight or expectation' or 'by reason of some violence, casualty, or vis major to be assured, without his design or consent or voluntary cooperation.' Equitable Accident Ins. Co. v. Osborn, 90 Ala. 201, 206, 9 So. 869, 370, 13 L.R.A. 267.

"We agree with the trial court that the only interpretation of this evidence is that insured brought about a condition from which his death was not to be unforeseen or unexpected nor an unusual result of it. He put his life at stake heedless of the consequences which should have been anticipated. The affirmative charge was properly given for defendant."

On rehearing, the Supreme Court also said:

". . . [I]t is also well settled that where by the undisputed evidence plaintiff has not shown that he is entitled to recover on his complaint, the court may direct a verdict for defendant, . . .

"When plaintiff fails to make out his case, there is no prejudicial error in directing a verdict for defendant without written request. [Citations omitted.]

"The burden was on plaintiff to prove that insured died from an injury sustained solely through external, violent, and accidental means, as was alleged in the complaint. The only evidence in the case was introduced by plaintiff, and from it, as we pointed out, the jury was not authorized to find that his death was so caused. Plaintiff, therefore, could not properly recover, and he sustained no injury ty the direction of the verdict for defendant, in whatsoever manner it may have been requested and given."

The facts in the case at bar are similar to those in *O'Bar* in that the undisputed testimony shows that the deceased here was the aggressor. He started the scuffle in the cafe which resulted in Bivins' pulling his gun and telling Southern and his companions who had drawn knives that he was not going to let them cut him. He also waited outside the front door to the cafe and attacked Bivins with a knife as Bivins went out the door. This is also undisputed. The evidence is also uncontradicted that while cutting at Bivins, Southern grabbed the pocket on Bivins' jacket from whence the pistol had been drawn inside; and that prior to and at the time Bivins drew his pistol and shot, Southern was stabbing at him with the knife.

Applying the rule of the above cited case to the undisputed facts of this case, we come to the inescapable conclusion that Southern was the aggressor from start to finish. He had knowledge that Bivins was armed with the pistol and that Bivins was not going to allow himself to be cut. Despite this knowledge, Southern waited outside the cafe and attacked Bivins with a knife. Consequently, Southern, being the aggressor, "voluntarily put his life at stake and deliberately took the chances of getting killed."

We further conclude that Southern's death was not an unforeseen, unexpected or unusual result of his actions. He knew Bivins had a pistol and he had been forewarned that Bivins was not going to tolerate being cut. However, in the face of this knowledge, Southern attacked Bivins with a knife. We therefore interpret the evidence in this case as did the Supreme Court in *O'Bar, supra,* to the effect that Southern should have anticipated the results of his act and his death was not the result of "accidental means" as provided in the policy of insurance which was the basis of this action.

As stated in *O'Bar,* the burden was on plaintiff to prove to the reasonable satisfaction of the jury that his son was killed by "accidental means" in order to recover. He did not sustain this burden; hence, the general affirmative charge without hypothesis should have been given to the jury.

Furthermore, we are convinced that the verdict is clearly not supported by the great weight of the evidence. Mobile City Lines v. Alexander, 249 Ala. 107, 30 So.2d 4; American Life Ins. Co. v. Anderson, 246 Ala. 588, 21 So.2d 791; and Cable-Burton Piano Co. v. Thomas, 26 Ala.App. 26, 152 So. 466, cert. den. 228 Ala. 112, 152 So. 468.

Appellee contends that under the law and facts of Aetna Life Ins. Co. v. Beasley, 272 Ala. 153, 130 So.2d 178, the case at bar was rightly presented to the jury. We disagree. The facts in the *Aetna* case are quite different from those presently before us. In the *Aetna* case a fourteen year old boy shot his father with a shotgun after his father had beaten the mother. Such beatings had occurred before and the boy had never made any threatening statements or gestures to his father over this conduct. The question of whether the deceased father had reason to anticipate that his son would shoot him was properly presented to the jury.

In the case at bar there was no such relationship between the two people involved in the affray. It was not shown that the two even knew each other. We have concluded that Southern entered the affray knowing that Bivins was armed and did not intend to be cut. The results should *not have been unexpected nor unanticipated.*

For the errors above pointed out, this case is reversed and remanded for a new trial.

Reversed and remanded.

WRIGHT, P. J., and HOLMES, J., concur.