311 So.2d 294

### PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY

v.

### Mitchell Ordean HANNA et al.

### SC 674.

Supreme Court of Alabama.

April 10, 1975.

Frank W. Riggs, Montgomery, for appellees.

Robert S. Lamar, Jr., Montgomery, for appellant.

SHORES, Justice.*

This appeal is from a final decree rendered in an action for declaratory judgment, involving a controversy among the claimants to the proceeds of life insurance policies on the life of Harry O. Hanna. The action was initiated by the minor children of the deceased, and named as respondents Provident Life and Accident Insurance Company (hereinafter referred to as Provident) and Marlene Hanna, widow of the insured. Subsequently, on motion of Provident, Frank W. Riggs, as administrator of the estate of Harry O. Hanna, was added as a party.

The complaint sought a declaration of rights under a life insurance policy issued by Provident, which named Marlene Hanna as primary beneficiary and the children of the deceased as alternate or contingent beneficiaries. The allegations were that the primary beneficiary had wrongfully and intentionally caused the death of the insured by shooting him with a pistol on December 9, 1972, and both she and the children claimed the proceeds of that policy.

In answer, Provident admitted that it had issued the life policy that was the subject of the complaint, that it did not contest its obligation to pay the amount thereof, and by reason of conflicting claims to the proceeds, paid the amount into court and asked it to determine the rightful claimant. That life policy is not involved on this appeal.

By way of counterclaim, Provident alleged that in addition to the life policy, the

subject of the complaint, it also had issued a group policy providing health and accidental death benefits in an additional amount of $25,000, which covered Harry O. Hanna at the time of his death. The widow, Marlene Hanna, was named as beneficiary.

Provident claimed that the insured's death was not accidental and that it was not liable under that group accident policy, and asked that the court so declare.

It is the group accidental policy with which we are concerned here. It provides:

"If an Employee sustains accidental bodily injuries . . . [while the policy is in effect] and as the result of such injuries suffers any of the losses named in the Table of Losses . . .

*"the Insurance Company will pay to the beneficiary* . . .

. . . . . .

"Loss of Life . . . The Principal Sum

. . . . . .

". . . Any amount of insurance for which there is no beneficiary at the death of the Employee shall be payable to the estate of the Employee."

After trial was had, a final decree was entered finding that the death of Harry O. Hanna was accidental under the terms of the policy, and:

". . . within the definition of the term 'accidental' as defined in Aetna Life Insurance Company v. Beadey [sic: Beasley], 272 Ala. 153, 130 So.2d 178 [1961]. The Court further finds that the alternate beneficiary under said policy, Frank W. Riggs, as Administrator of the Estate of Harry O. Hanna, is entitled to the proceeds thereof. . . ."

* This case was originally assigned to another justice of this court, since retired. It has been reassigned to the writer, not a member of this court at time of submission, who has

carefully listened to the tape recordings of oral argument. Code of Alabama, Tit. 13, § 7; Alonzo v. State ex rel. Booth, 283 Ala. 607, 219 So.2d 858.

Provident appealed and argues that the court erred in finding:

1. That the death of Harry O. Hanna was accidental under the terms of the policy;

2. That the death was accidental within the definition of the term "accidental" as defined by this court in Aetna Life Insurance Company v. Beasley, supra;

3. That the administrator of the estate of the insured was entitled to the proceeds of the policy; and finally

4. That the court erred in denying appellant's motion for findings of fact.

In a number of cases, this court has established criteria by which to test the facts for determining whether a death is accidental. The following statement is made in O'Bar v. Southern Life & Health Ins. Co., 232 Ala. 459, 462, 168 So. 580 (1936), and approved in Aetna Life Insurance Company v. Beasley, supra:

"To constitute an accidental death, it must have resulted from something unforeseen, unexpected, and unusual. Carroll v. Fidelity, etc., Co., supra [4 Cir., 137 F. 1012], or 'which happens as by chance, or which does not take place according to the usual course of things,' or 'without foresight or expectation' or 'by reason of some violence, casualty, or vis major to the assured, without his design or consent or voluntary cooperation.' Equitable Accident Ins. Co. v. Osborn, 90 Ala. 201, 206, 9 So. 869, 870, 13 L.R. A. 267."

Provident has no quarrel with this general definition, but contends that other rules spelled out in O'Bar are controlling. Specifically, it relies on the following statement made in that case:

"The rule is that when insured is the aggressor, especially with a deadly weapon, and makes such an attack on another as would naturally invite a deadly encounter in resistance of his attack, and as the probable consequence of it, and he is killed by the other while so resisting him, it cannot be regarded as an accidental death, since he voluntarily put his life at stake and deliberately took the chances of getting killed. . . .

"In some cases it appears that insured had knowledge that his opponent was armed with a deadly weapon when he began the attack, and their statement of the rule is upon that hypothesis. . . ."

Provident argues the last stated rule taken from O'Bar controls in this case. It insists the evidence requires a finding that Mr. Hanna voluntarily put his life at stake and deliberately took the chance of getting killed.

In O'Bar, where the evidence was uncontradicted, this court said:

"We agree with the trial court that the only interpretation of this evidence is that insured brought about a condition from which his death was not to be unforeseen or unexpected nor an unusual result of it. He put his life at stake heedless of the consequences which should have been anticipated. . . ."

Unlike the situation found in O'Bar, the evidence in this case is conflicting. Without detailing all of it, there clearly was sufficient evidence to support the finding made by the trial court that the death was accidental, as defined in our cases. The evidence was in part, that Mr. and Mrs. Hanna had been married but a short time, that the marriage was a stormy one, marked by frequent arguments and threats of violence by each partner, that Mrs. Hanna had remarked to various persons that she was going to leave her husband. Some testified that she had stated on occasion that she was going to kill him, a statement which she denied.

On the night of his death, she and her husband had been to a party and had been observed in heated argument with each

other. One witness testified that on the night of Hanna's death he had seen two people in the parking lot of the club where the party was held, but could not identify Mrs. Hanna as one of them, and had seen the woman hitting the man as he attempted to open the automobile door. Mrs. Hanna testified that she and her husband had an argument at the club, that it persisted on the way home, that Mr. Hanna had beaten her en route to their home, threatened to kill her, as he had in the past, and continued to beat her after they reached their home.

Her testimony, which was all there was, with regard to the immediate events leading up to his death, was that they continued fighting after they were in the house, that she got away from her husband and locked herself in a bathroom, where she said, she "felt like I was going to blackout." She came out of the bathroom and heard her husband saying that he was going to kill her, went into the bedroom, got a pistol, and was attempting to leave the house when her husband again accosted her, stating that he was not afraid of the pistol and that he was going to kill her anyway. She went on to say that Mr. Hanna pushed her onto the couch and "when I landed on the couch, the pistol went off; and evidently, I kept pulling the trigger . . ."

■ With this testimony before it, we cannot say that the trial court erred in its determination that Mr. Hanna's death was accidental. We do not agree with Provident's contention that the trial court erred in finding the death was accidental as defined in *Aetna*, supra. There the evidence was the insured had been drinking heavily on the night he was shot by his fourteen-year-old son, had habitually beaten his wife when he was drinking, did so on the night of his death, and when he attempted to return to the room in which his wife lay unconscious, threatening to kill her and his son, the son shot and killed him.

In *Aetna*, we said:

"We cannot say as a matter of law that the husband, although intoxicated and belligerant, intended to kill his wife and son, or that the natural and probable consequence of his actions was that his son, who had never physically resisted or reacted to his father's threats and abuses toward his mother, would turn upon his father and kill him when he again threatened and assaulted his wife."

■ Here, as in *Aetna,* we cannot say as a matter of law that the death was not accidental. There was evidence to support a finding that Mrs. Hanna killed her husband in self-defense, or that the gun went off accidentally, or that she intended to kill him. The issue of whether the death was accidental must be determined according to the accepted view "that an accident is an occurrence that is not to be expected or anticipated in the light of common experience and of the existing circumstances," and such determination is made from the standpoint of the insured.

" . . . The fact that the beneficiary kills the insured in what the former supposes is self-defense does not mean that the killing is not an 'accident' within the meaning of the [policy] provision, unless it appears that the insured must have known, or at least have anticipated, that because of his conduct the beneficiary would in all probability kill him." 44 Am.Jur.2d, Insurance, § 1742.

■ As decided in Protective Life Ins. Co. v. Linson, 245 Ala. 493, 17 So.2d 761 (1944), where the primary beneficiary's rights are forfeited, the insurance company remains liable for the proceeds of the policy, to the contingent beneficiary or the insured's estate, as the case may be. Had the trial court found—which it did not—that Marlene Hanna forfeited her rights, such a finding would not be contradictory of the finding of accidental death. The liability of Provident is established by the

finding that the death was accidental. As the primary beneficiary, Marlene Hanna was a party to the proceedings. As she did not appeal, she is bound by the judgment of the trial court.

Provident next argues that the court erred in awarding the proceeds to the administrator, stating in brief that the only issue with regard to the accident policy was whether the named beneficiary intentionally killed the insured. If so, says Provident, the policy was payable to the administrator, and if not, it was payable to no one.

The burden of Provident's argument on this point is that Mrs. Hanna made no claim to the proceeds of the accidental policy. As we read the record, it fails to support this contention. Provident argues that Mrs. Hanna's position, as stated in the pretrial order, was that she had killed the insured in self-defense and was entitled to the proceeds of straight life policies, but made no claim to the proceeds of the accidental death policy. As we read the record, we think it is clear that her claim to the proceeds of the group accident policy was litigated.

At page 51 et seq., of the record on appeal, the following appears:

"MR. LAMAR [Provident's counsel]: . . . We're just saying that she hasn't made any claim. She can't recover without making a claim than [sic, there] being no claim that [sic, there] is no recovery. . . . that's not covered by the pre-trial order. So we're going to contend that the issues are just the same that they were when the pre-trial order was signed, sealed, and delivered.

"MR. RIGGS [Administrator]: Well, of course, Your Honor, the pre-trial order does not make any issue about whether or not any claim has been filed. And I think we need to resolve that question, because if the company contends that either potential claimant has to file a claim, that's the first time that's the first time that's been raised—

"MR. LAMAR: You filed a claim; you filed a suit.

"MR. SMITH [counsel for Marlene Hanna]: Well, we submit to the jurisdiction of the court; the court has jurisdiction in that—

"MR. RIGGS: I certainly think that the fact that I brought all the parties into court would obviate the necessity of Marlene Hanna filing any form of claim for the proceeds.

"THE COURT: Have you examined that policy?

"MR. RIGGS: Yes, sir.

.    .    .    .    .    .

"THE COURT: However, I think—it's my judgment—and I'm going to hold that the filing the suit would take the place of substituting a filing the claim.

"MR. LAMAR: Yes, but he filed the suit. Mrs. Hanna has never filed even an answer, either admitting or denying anything.

"THE COURT: Well, I'll let them do that this morning.

.    .    .    .    .    .

"MR. RIGGS: Well, Your Honor, let me state that I claim that either Marlene Hanna or, well, maybe I don't claim the two children are [sic, or] if they are not named alternate beneficiaries; but I claim that either Marlene Hanna or I as administrator of the estate—

"MR. LAMAR: No, you didn't claim that in the pre-trial order, Frank; you claimed that she murdered him. Now, you can't come and claim she murdered him and say that now she didn't.

"MR. RIGGS: I do, as between me and Marlene Hanna, Your Honor, I do claim that, but that doesn't preclude me from claiming that somebody is entitled to proceeds of this insurance. The insurance company, as I read it, is trying to get out of paying it to anybody. And I think if the death wasn't accidental,

they are entitled to get out of paying it to anybody; but if [it] was an accidental death, the proceeds of the insurance is due to be paid somebody who is a party to this lawsuit. Now, does anybody disagree with that?

"MR. LAMAR: No, I disagree with it, because if there is no claim by Marlene that she is entitled to it.

.    .    .    .    .    .

"MR. RIGGS: I think, Judge, that we're dealing here with a question of maybe what the evidence is, and not a question of any legally binding position that any party has taken in this lawsuit. . . . we submit, Your Honor, that the fact there is an element of self-defense here doesn't necessarily mean that Marlene Hanna couldn't be the beneficiary. What I say to the court is this: I do claim that Marlene Hanna murdered Harry Hanna, but I'm claiming alternatively, which under the new rules there isn't any question but what I'm entitled to, I'm claiming alternatively that if I fail to meet the burden of proof on that point, that she is still entitled to receive the proceeds of that policy.

.    .    .    .    .    .

"MR. RIGGS: Now, I'm going to talk to the court, and I would like for you to do that too. They are claiming, as I understand it, only that she wouldn't be entitled because she hasn't filed a claim, as I understand it in court, the rule that the filing of the suit would object [sic, obviate] the necessity of filing it.

"THE COURT: That's going to be my ruling. Gentlemen, let's proceed. . . ."

We think the foregoing amply demonstrates that the case went to trial on the issue of whether the death of Harry O. Hanna was accidental within the meaning of the policy, and if so, which claimant was entitled to the proceeds.

Provident filed the counterclaim which raised the question of its liability under the accidental death policy. Its contention was that the death was not accidental, and that it therefore was not liable under that policy. Marlene Hanna, the primary beneficiary, was a party to those proceedings, as was the administrator of the estate of the insured, the contingent beneficiary under the policy. All the parties were before the court when it determined that the insurer was liable under the policy and that the administrator was not entitled to the proceeds. It had the authority to make that determination. There being evidence in the record to support its determination on both issues, it will not be disturbed here.

 Provident's only remaining argument is that the court erred in denying its motion for findings of fact. Under ARCP 52, any party may request findings and conclusions, but the allowance of the motion is purely discretionary with the trial court, unless required by statute to do so. We find no abuse of discretion in denying the motion here.

There is no error to reverse. The decree appealed from is, therefore, affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, MADDOX and JONES, JJ., concur.