Plaintiff/Appellant Bonnie Hearn appeals, following a directed verdict for the Defendant/Appellee Southern Life 
Health Insurance Company in a suit alleging nonpayment of benefits on three "accident" insurance policies. We reverse.
On the evening of June 26, 1981, William H. Hearn, the Plaintiff's son, was driving a pickup truck in Waterloo, Alabama, when he became involved in a high-speed chase with a police officer. After pursuing Hearn for about eight miles, at speeds between 70 and 80 miles per hour on the straight sections of the road, the officer discontinued the chase. Shortly thereafter, beyond the sight of the pursuing officer, Hearn's truck left the road and crashed into a gulley. Hearn, while attempting to escape through a jammed door, died of smoke inhalation in a fire that engulfed his wrecked vehicle. A blood sample taken from Hearn's body by the coroner indicated a blood alcohol content of .11 percent.
Defendant/insurer refused to pay accidental death benefits under three policies, each of which was in force and effect on the date of the insured's death. At the close of the evidence, the trial court ruled, as a matter of law, that the cause of death was not "accidental" as defined by the respective policies. One of these policies, a "Non-Participating Travel Accident Policy," insuring William Hearn and naming Bonnie Hearn as beneficiary, provides in pertinent part:[1]
 "1 BENEFIT FOR DEATH FROM TRAVEL ACCIDENT INJURY — Upon receipt of due proof that the Insured, while this policy is in full force and effect, has sustained a travel accident injury, as defined below, which results within 90 days of its occurrence in the death of the Insured, the Company will pay the Principal Sum to the beneficiary named in the Schedule.
". . .
 "3 MEANING OF TRAVEL ACCIDENT INJURY — Death or losses for which payment will be made must directly and independently of all other causes result from accidental bodily injury, visible on the exterior of the body or disclosed by autopsy, which is sustained (1) while driving or riding on a public highway in an automobile, bus or truck. . . .
 "4 EXCLUSIONS — This policy does not cover death resulting from bodily or mental infirmity, illness or disease or treatment therefor; nor does it cover death or loss of limbs or eyesight resulting directly or indirectly from (1) intentionally self-inflicted injury, while sane or insane. . . ."
This Court, in O'Bar v. Southern Life Health InsuranceCompany, 232 Ala. 459, 168 So. 580 (1936), promulgated the legal test, under the facts there presented, for determining whether a death is accidental. In O'Bar, the insured made a deadly unprovoked attack on another man in the victim's home, shooting at him with a pistol and then beating him. The victim ultimately was able to pull his knife and cut the insured in the chest, causing his death. The Court stated the applicable rule:
 "[W]hen insured is the aggressor, especially with a deadly weapon, and makes such an attack on another as would naturally invite a deadly encounter in resistance of his attack, and as the probable consequence of it, and he is killed by the other while so resisting him, it cannot be regarded as an accidental death, since he voluntarily put his life at stake and deliberately took the chances of getting killed."
". . .
 "To constitute an accidental death, it must have resulted from something unforeseen, unexpected, and unusual . . . or `which happens as by chance, or which does not take place according to the usual course of things,' or `without foresight or expectations' or `by reason of some *Page 934 
violence, casualty, or vis major to the assured, without his design or consent or voluntary cooperation.'" (Citations omitted.) (Emphasis supplied.) 232 Ala. at 462, 168 So. at 582.
O'Bar was cited with approval in Provident Life and AccidentInsurance Company v. Hanna, 294 Ala. 37, 311 So.2d 294 (1975). The insured in Provident Life was killed when his wife shot him repeatedly with a pistol after she was accosted by him. Although reaching the opposite result from that reached inO'Bar, the Provident Life Court said:
 "[W]e cannot say as a matter of law that the death was not accidental. There was evidence to support a finding that Mrs. Hanna killed her husband in self-defense, or that the gun went off accidentally, or that she intended to kill him. The issue of whether the death was accidental must be determined according to the accepted view `that an accident is an occurrence that is not to be expected or anticipated in the light of common experience and of the existing circumstances,' and such determination is made from the standpoint of the insured." 294 Ala. at 41, 311 So.2d 297 (emphasis added).
The Court distinguished O'Bar on its facts. While in O'Bar the evidence was not susceptible of contrary inferences, the evidence in Provident Life gave rise to conflicting inferences of fact. In O'Bar, the Court said:
 "We agree with the trial court that the only interpretation of this evidence is that insured brought about a condition from which his death was not to be unforeseen or unexpected nor an unusual result of it. He put his life at stake heedless of the consequences which should have been anticipated. . . ." (Emphasis supplied.) 232 Ala. at 462, 168 So. at 582-83.
Under facts similar to those in O'Bar, the Alabama Court of Civil Appeals reached the same result in Insurance Company ofNorth America v. Southern, 52 Ala. App. 357, 292 So.2d 476
(1974). On the other hand, the Provident Life Court determined that there was sufficient evidence to support the finding made by the trial court that the death was accidental.
The Provident Life Court also relied upon Aetna LifeInsurance Company v. Beasley, 272 Ala. 153, 130 So.2d 178
(1961), where the Court refused to hold that, as a matter of law, the shooting of a father by his son, after the father threatened the boy and his mother with bodily harm, was not accidental. The Beasley Court, affirming the judgment of the trial court, said:
 "We cannot say as a matter of law that the husband, although intoxicated and belligerent, intended to kill his wife and son, or that the natural and probable consequence of his actions was that his son, who had never physically resisted or reacted to his father's threats and abuses toward his mother, would turn upon his father and kill him when he again threatened and assaulted his wife." 272 Ala. at 157, 130 So.2d at 182.
The preceding cases are helpful by analogy only, because they deal, factually, with an assault by the insured which results in his death. Neither Mrs. Hearn nor the insurance company cites any Alabama authority dealing with the precise issue here presented, nor do we find any. We do find, however, helpful language in several of our cases. Beasley reasoned that a death may be caused by accidental means, even where that means is voluntarily rendered, if, in the precipitating act, something unforeseen, unusual, or unexpected occurs to produce the resultant injury.
Hanna v. Riggs, 333 So.2d 563 (Ala. 1976), explained the "reasonable man" standard when applying the "foreseeability" test in the context of death by accidental means. Foreseeability of death resulting from the insured's voluntary actions must be tested from the subjective viewpoint of the insured himself. Indeed, this subjective foreseeability test is also suggested in Black's Law Dictionary, 5th ed. (1979), when it defines "accident" as an "event which under the circumstances is unusual and unexpected by the person to *Page 935 whom it happens." (Emphasis added.)[2] See, also, Provident Life Accident Insurance Co. v. Hanna, 294 Ala. 37, 311 So.2d 294
(1975).
Through excellent briefs, both sides cite authority from other jurisdictions tending to support their respective contentions.
In Metropolitan Life Insurance Company v. Henkel, 234 F.2d 69
(4th Cir. 1956), the court affirmed the judgment of the trial court, sitting without a jury, which ordered the insurance company to pay under a double indemnity provision, finding that the insured's death was caused by accidental means within the meaning of the policy. The insured was "fleeing in an automobile from officers of the law at a reckless and unlawful rate of speed of 90 miles an hour or more." There was no evidence that he had violated the law or had been guilty of any unlawful conduct prior to his flight. After he encountered a fork in the road, which he failed to negotiate, his vehicle flipped over, causing the injuries from which he died.
In Dooley v. Metropolitan Life Insurance Company,250 A.2d 168, 104 N.J. Super. 429 (1969), the insured failed to negotiate a curve, causing the car which he was driving to run off the road and strike a pole. As a result, the insured suffered serious injuries which resulted in his death. The Dooley court said:
 "The crash, which was the proximate cause of the injuries and death, resulted from failure to negotiate a curve in the road, which was an unexpected, unforeseen and unusual event constituting accidental means. . . . Furthermore, for insurance contract purposes, an insured is not deemed to intend all the probable or foreseeable consequences of his conduct, and recovery is only precluded where there is a reasonable basis for his belief that his conduct makes serious injury or death a virtual certainty." 250 A.2d at 170.
Similarly, O'Toole v. New York Life Insurance Co.,671 F.2d 913 (5th Cir. 1982), affirmed the trial court's finding that the insured's death, following a self-administered injection of cocaine, was "accidental." The policy in question excluded death by suicide, but death resulting from self-administered drugs was not explicitly excepted. The lower court found, and the appellate court agreed, "that although [the insured] intentionally injected himself with cocaine, he did not intend to cause nor did he anticipate that this injection would cause his death."
Reaching the same result, the Illinois Appellate Court, inRodgers v. Reserve Life Insurance Co., 8 Ill. App.2d 542,132 N.E.2d 692 (1956), reasoned that, even where one voluntarily exposes himself to unnecessary danger, he may still die by accidental means if his death is the result of a miscalculation of speed, distance, or his own driving capabilities.
We agree with the analysis as posited by these courts. Although it may have been negligent for William to drive his car in the manner in which he did, and although he intended to drive the vehicle at excessive speeds, the insurer accepts the risks of such negligent and intentional acts, excluding coverage only for intentional injury and suicide.
Here, as in Aetna and Provident Life, we cannot say, as a matter of law, that William's death did not occur as the result of an accident. The jury, as factfinder, was free to reject, as a conclusion of fact, the theory that William intended to die from smoke inhalation while pinned in his car. Furthermore, we are influenced by the fact that none of the policies contained a provision excluding from coverage an accident or death occurring "while speeding in an automobile," "while violating the law," etc. The insurance company *Page 936 
was free to make such an exclusion and evidently chose not to do so.
Because the evidence supports an inference of fact that death was an accident, we hold that the trial court erred in directing a verdict for the Defendant. The judgment of the trial court, therefore, is due to be, and it hereby is, reversed; and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.
[1] While the exact wording of the three policies differs ones from the other, for the purposes of this case the language in contention is essentially the same; therefore, the analysis applicable to one policy is applicable to all.
[2] One might speculate, in jest, that a snake bite, or a kick by a mule, is accidental or not depending on whether it is tested from the point of view of the perpetrator or the victim. For a case applying the subjective standard to a policy of insurance excluding coverage for injury neither "expected nor intended from the standpoint of the insured," see Alabama Farm BureauMut. Cas. Ins. Co. v. Dyer, 454 So.2d 921 (Ala. 1984).