Maggie J. Hairston appeals from a summary judgment entered in favor of the defendant, Liberty National Life Insurance Company, in an action alleging breach of contract and bad faith failure to pay an insurance claim. The question presented is whether the trial court erred in holding that, as a matter of law, the death of Ms. Hairston's ex-husband, James L. Hairston, by acute ethanol poisoning, was not "accidental" within the terms of the insurance policy on Mr. Hairston's life.
The facts leading up to the death of Mr. Hairston are undisputed. On the night of his death, he and three companions went to several bars and there consumed a large amount of alcohol. The four also drank a half gallon of "Thunderbird" wine that they had purchased at a package store. After they had drunk the wine, Hairston stated that he was going home and "staggered across the street." Two days later Mr. Hairston's body was discovered in the backyard of a residence near where his drinking companions had last seen him. An autopsy was performed by the Jefferson County coroner, Dr. J.P. Garceau, who concluded that Hairston had died as a result of acute ethanol poisoning.
The trial court entered a summary judgment for Liberty National, holding that, as a matter of law, Mr. Hairston's death was not "accidental" within the meaning of that term as it was defined in the life insurance policy, and thus, that no accidental death benefits under the policy were due to be paid. It is from that judgment that Maggie Hairston appeals.
The parties do not dispute the fact that Mr. Hairston often drank excessively or that he voluntarily and intentionally drank alcohol on the night of his death. Thus, the only question for our review is whether *Page 808 
Mr. Hairston's death could have been "accidental" within the meaning of the life insurance policy issued by Liberty National.
The accidental death provisions in the insurance policy on Mr. Hairston's life provided, in pertinent part, as follows:
 "BENEFITS — Upon receipt at its Home Office of due proof that the death of the Insured resulted, directly and independently of all other causes, from bodily injury effected solely through external, violent and accidental means as evidenced by a visible wound or contusion on the exterior of the body (except in case of drowning or internal injuries revealed by autopsy) . . . the Company will, subject to all provisions of the policy and to the conditions thereunder, pay to the beneficiary, in addition to the amount otherwise provided by the policy, the Additional Indemnity for Death by Accidental Means. . . .
 "EXCLUSIONS FROM COVERAGE — The Additional Indemnity for Death by Accidental Means shall not be payable if the Insured's death results directly or indirectly (a) from self-destruction, or any attempt thereat, whether sane or insane, or (b) from bodily or mental infirmity or disease of any kind or medical or surgical treatment therefor, or (c) from committing or attempting to commit an assault or felony, or (d) from insurrection or war or any act attributable to war (declared or undeclared, or any conflict between the armed forces of countries) whether or not the Insured is in military service, or (e) from participating or engaging in a riot, or (f) from operating or riding in or descending from any kind of aircraft of which the Insured was a pilot, officer, or member of the crew, or in which the Insured was giving or receiving training or instruction or had any duties."
Liberty National argues that these policy provisions make this policy an "accidental means" policy as opposed to an "accidental results" policy. Thus, it contends that, although Mr. Hairston's death was accidental, the means by which the death occurred, i.e., the consumption of alcoholic beverages, was not accidental, and that, therefore, no coverage is afforded under this policy. On the other hand, Maggie Hairston contends that Alabama law does not recognize a distinction between "accidental means" and "accidental results." She contends, in the alternative, that, even if Alabama does recognize such a distinction, the circumstances surrounding Mr. Hairston's death fall within the "accidental means" provision.
In Emergency Aid Insurance Co. v. Dobbs, 263 Ala. 594,83 So.2d 335 (1955), this Court recognized a distinction between "accidental results" and "accidental means." However, we also set forth a broad definition of what constitutes a death or injury by accidental means:
 "It is an accidental death or injury if the result is an accident whether or not due to accidental means; but it is caused by accidental means, although the means employed were voluntarily rendered, if, in the act preceding the injury, something unforeseen, unusual and unexpected occurs which produces the result."
Dobbs, 263 Ala. at 599, 83 So.2d at 338. From this definition, it is clear that even a voluntary act that leads to an unforeseen, unusual, or unexpected result could invoke coverage under an "accidental means" policy.
In Hearn v. Southern Life Health Insurance Co.,454 So.2d 932 (Ala. 1984), the insured's beneficiary brought an action against the insurer, alleging nonpayment of the benefits on three policies providing accidental death benefits. The insured was killed when, after a high-speed chase by a police officer, his vehicle left the road and crashed into a gully. The insured died of smoke inhalation while attempting to escape from the vehicle through a jammed door. This court, in reversing the trial court's judgment based on a directed verdict in favor of the defendant insurance company, recognized that "even where one voluntarily exposes himself to unnecessary danger, he may still die by accidental means if his death is the result of a miscalculation of speed, distance, or his driving *Page 809 
capabilities." Hearn, 454 So.2d at 935. Further, we concluded that, for insurance contract purposes, an insured is not held to intend all the probable or foreseeable consequences of his actions, and we determined that recovery is precluded only where "there is a reasonable basis for his belief that his conduct makes serious injury or death a virtual certainty."Hearn, supra, quoting Dooley v. Metropolitan Life InsuranceCo., 104 N.J. Super. 429, 250 A.2d 168 (1969). This Court has also held:
 "[O]ur point of view in fixing the meaning of this contract must not be that of the scientist. It must be that of the average man. Such a man would say that the dire result, so tragically out of proportion to its trivial cause, was something unforeseen, unexpected, extraordinary, an unlooked-for mishap, and so an accident. This test — the one that is applied in the common speech of men — is also the test to be applied by courts."
Northam v. Metropolitan Life Ins. Co., 231 Ala. 105, 107-08,163 So. 635, 637 (1935), quoting Lewis v. Ocean Accident Guarantee Corp., 224 N.Y. 18, 120 N.E. 56 (1918).
Our review of the insurance policy at issue and of the facts and circumstances surrounding Mr. Hairston's death leads us to the conclusion that the trial court erred in holding that, as a matter of law, this death was not an "accident" within the meaning of the policy. A jury could find that the death, while a result of the insured's voluntary actions, was something unforeseen, unexpected, and unusual, or that, as was the case in Hearn, supra, the insured died as the result of a miscalculation of his capabilities. Under the holdings of Dobbs
and Hearn, we cannot say as a matter of law that the death was not an accident. Liberty National has not argued that any of the exclusions from coverage that Liberty National chose to insert in this policy barred Maggie Hairston's recovery under the additional indemnity provisions, see Hearn, supra, or that the judgment is due to be affirmed for any other reason.
The trial court erred in determining that, as a matter of law, James L. Hairston's death was not an "accident" under the terms of this life insurance policy. Maggie Hairston does not argue that the summary judgment on the bad faith claim is due to be reversed. Therefore, the judgment is affirmed as to the bad faith claim and reversed as to the breach of contract claim, and the cause is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.