[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 2, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12373

_____

D. C. Docket No. 06-00449-CV-H-S

PEGGY TYLER,

Plaintiff-Appellant,

versus

AIG LIFE INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Northern District of Alabama

_____

**(April 2, 2008)**

Before ANDERSON and BLACK, Circuit Judges, and HODGES,[*] District Judge.

HODGES, District Judge:

_____

[*]Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of
Florida, sitting by designation.

On April 18, 2004, Shirley Bailey opened the passenger door and jumped from a moving vehicle being driven by her boyfriend with whom she had been having an argument. The vehicle, a Ford Explorer, was "moving slowly" at the time, no more than 20 to 25 miles per hour.[1] Bailey suffered a head wound that caused her death two days later. There is no evidence that the door opened unexpectedly, that she was threatened or pushed, that she was under the influence of any drug or alcohol, or that she was depressed or suicidal. She simply opened the door and jumped out.

Peggy Tyler was the beneficiary of two accidental death and dismemberment policies covering Bailey. The insurer, AIG Life Insurance Company, refused to pay because, it contended, the deceased had not suffered an injury caused by an "accident" as required by the policies.[2] Tyler sued under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* The district court decided the case on cross motions for summary judgment, finding for the insurance company. Tyler appeals. We vacate the district court's order and remand.[3]

---

[1]There is a factual dispute about the exact speed of the car, but the parties agree that it was moving no faster than 20 to 25 miles per hour. The district court found that this issue did not matter; it was enough that the vehicle was moving fast enough to cause the injuries sustained.

[2]Neither of the insurance policies contain a definition of the term "accident."

[3]Because the case is governed by ERISA, and because the parties agree that AIG did not have discretion to determine eligibility for benefits or to construe the terms of the plan, the district court properly held that it should review *de novo* the denial of benefits. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 (1989); Williams v. Bellsouth Telecomms., Inc., 373 F. 3d 1132, 1137 (11th Cir. 2004); Shaw v. Conn. Gen. Life Ins. Co., 353 F. 3d 1276, 1282 (11th Cir. 2003); HCA Health

Because the term "accident" is not specifically defined by the policies, the district court appropriately resorted to Alabama law as supplying the rule of decision since the policies were delivered in Alabama, the loss occurred in Alabama, and because the court found no conflict between Alabama law and either ERISA or federal common law on this definitional legal issue. See Buce v. Allianz Life Insurance Co., 247 F.3d 1133, 1148-49 (11th Cir. 2001).

Thus, the case came down to this: If Alabama law applies a purely subjective test to determine whether the fatal act of the insured was intentional or accidental, the claimant wins because the decedent's death was presumed by law to be accidental, see Hearn v. Southern Life & Health Insurance Co., 454 So. 2d 932 (Ala. 1984); O'Bar v. Southern Life & Health Ins. Co., 168 So. 2d 580 (Ala. 1983); Hanna v. Riggs, 333 So. 2d 563 (Ala. 1976), and the insurance company cannot prove that she intended to take her own life or that she had a basis for believing that serious injury or death would be a virtual certainty by jumping out of the vehicle under the circumstances presented. If, however, as the district court held, Alabama law includes both a subjective and an objective test for determining whether the consequences of a given act are "accidental," then the result reached by the district

---

Servs. of Georgia, Inc. v. Employers Health Ins. Co., 240 F. 3d 982, 993 (11th Cir. 2001). Similarly the district court judgment is subject to de novo review here on appeal. Doyle v. Liberty Life Assur. Co. of Boston, 511 F. 3d 1336, 1341 (11th Cir 2008); Williams, 373 F. 3d at 1134.

3

court was correct because, objectively, serious injury or death would clearly be foreseeable to any reasonable person without protective headgear contemplating a leap onto a paved street from a moving vehicle going fast enough to cause the injuries Bailey suffered.[4]

The debate about Alabama law centers on Hearn v. Southern Life & Health Insurance Co., 454 So. 2d 932 (Ala. 1984). The district court interpreted Hearn as adopting a rule that cases such as this one should be decided by applying a test having both subjective and objective components. Judgment for AIG followed.

After careful review, we conclude that the distinguished district judge misread Hearn.

## I. The Hearn Decision

Since 1936, the stable law of Alabama has included the following test for determining whether a death is accidental for purposes of insurance coverage:

> To constitute an accidental death, it must have resulted from something unforeseen, unexpected, and unusual . . . or 'which happens as by chance, or which does not take place according to the usual course of things,' or 'without foresight or expectations' or 'by reason of some

---

[4]In addition to her fatal head wound, an autopsy revealed widely scattered bruises and a scrape on her left flank. As will be seen, infra, the subjective test requires evidence that the decedent believed serious injury or death to be a "virtual certainty" in order to establish the requisite intent and rule out an accident. An objective test would merely require foreseeability to a reasonable person that serious injury or death would likely occur, a standard that would be met here as the district court concluded.

4

violence, casualty, or vis major to the assured, without his design or consent or voluntary cooperation.'

O'Bar v. Southern Life & Health Ins. Co., 168 So. 580, 582 (Ala. 1936).

Between 1936 and 1984, the Alabama courts largely applied this test in cases where the insured assaulted another person, thereby triggering an altercation ending in the insured's death. It was not until the Hearn case arose in 1984 that the Alabama Supreme Court confronted a fact pattern not involving a third party where an insured voluntarily engaged in risky conduct but did not specifically intend his or her own death.

In Hearn, the insured was driving a pickup truck and became involved in a high speed chase by a police officer at speeds in excess of 70 and 80 miles per hour. Shortly after the police officer abandoned pursuit, the insured crashed into a gulley. He was pinned in his truck and died from smoke inhalation due to a fire that engulfed the vehicle. At the time of his death, his blood alcohol level was .11 percent. The insurer refused to pay death benefits under three policies on the basis that the death was not "accidental" as the policies required for coverage to attach. 454 So. 2d at 932.

The Hearn Court began its analysis by citing one of its prior decisions involving an assault by an insured, explaining that the "[f]oreseeability of death

5

resulting from an insured's voluntary actions *must be tested from the subjective viewpoint of the insured himself.*" 454 So. 2d at 934 (citing Hanna v. Riggs, 333 So. 2d 563 (Ala. 1976)) (emphasis added).[5] The Court then considered four decisions from other jurisdictions involving accidental death policies that were interpreted and applied in analogous factual situations. 454 So. 2d at 935-36. In each of these cases, the deciding court concluded that although the insured's actions exposing himself to a risk of harm may have been voluntary and intentional, the insured did not expressly intend to die, so that death was by "accidental means" and covered by the policies. See O'Toole v. New York Life Ins. Co., 671 F. 2d 913 (5th Cir. 1983) (holding that while the insured "intentionally injected himself with cocaine, he did not intend to cause nor did he anticipate that this injection would cause his death."); Metropolitan Life Ins. Co. v. Henkel, 234 F. 2d 69 (4th Cir. 1956) (affirming judgment of trial court that death of insured was caused by "accidental means" where insured died in a car crash following a reckless high speed chase with police); Rodgers v. Reserve Life Ins. Co., 132 N. E. 2d 692 (1956) (insured's death is accidental even where he

[5]The Hearn Court also noted with approval language in Aetna Life Ins. Co. v. Beasley, 130 So. 2d 178 (1961), another insured assault case, which "reasoned that a death may be caused by accidental means, even where that means is voluntarily rendered, if, in the precipitating act, something unforeseen, unusual, or unexpected occurs to produce the resultant injury." 454 So. 2d at 934. Hearn also quoted Provident Life & Accident Ins. Co. v. Hanna, 311 So. 2d 294 (1975), which stated, in pertinent part: "[a]n accident is an occurrence that is not to be expected or anticipated in light of common experience and of existing circumstances, and such determination is made from the standpoint of the insured."

voluntarily exposes himself to unnecessary danger); Dooley v. Metropolitan Life Ins. Co., 250 A. 2d 168, 170 (N.J. 1969) (driver's negligent failure to negotiate a curve in the road, which caused car accident resulting in his death was "an unexpected, unforeseen and unusual event constituting accidental means . . . .").

The Alabama Supreme Court then held in Hearn that the evidence supported an inference of fact that the insured's death was an accident, and it therefore reversed the trial court's directed verdict in favor of the insurance company. The Court specifically noted that a jury could easily have rejected the theory that the insured intended to die from smoke inhalation while pinned in his truck. At no time did the Hearn Court analyze the evidence in terms of a "reasonable man" or any other objective standard; rather, its focus remained on the specific intent of the insured.

## II. The District Court's Analysis

The district court read Hearn to establish a test that includes both an objective and subjective component in determining whether a given death is accidental or intentional. The district court focused on a lone sentence in the New Jersey Dooley decision cited in Hearn, stating that "recovery is only precluded where there is a reasonable basis for his belief that his conduct makes serious injury or death a virtual certainty." Hearn, 454 So. 2d at 935 (quoting Dooley, 250 A. 2d at 170).

That statement, however, and statements like it in the other relevant decisions, uniformly relate to the question of whether the factual circumstances under review would make serious injury or death a virtual certainty to the decedent. In none of the Alabama cases, including Hearn, does the court actually apply an objective test or analysis – a reasonable person inquiry – in addition to the determination of what the decedent personally intended – a purely subjective test albeit aided by an objective review of the facts. We conclude, therefore, unlike the district court, that Alabama law requires application of a subjective test in this case; and the question is whether the decedent had a reasonable basis to believe that her conduct made serious injury or death a virtual certainty. An objective test inquiring as to the foreseeability of serious injury or death to a reasonable person in the same circumstances is not appropriate. And, in this case, given the slow speed of the moving vehicle at the time, it cannot be said that serious injury or death was a virtual certainty to the decedent. She could reasonably have concluded that some injury was likely but that serious injury or death was not.

Other decisions from both Alabama and this Circuit support this conclusion about Alabama law. In Hairston v. Liberty National Life Ins. Co., 584 So. 2d 807 (Ala. 1991), the insured died as a result of acute ethanol poisoning after a night of heavy drinking. The insurer denied coverage, contending that the death was not by

8

"accidental means." Citing <u>Hearn</u>, the <u>Hairston</u> court concluded that the trial court erred in holding that, as matter of law, the death was not an "accident." The court specifically noted that

> A jury could find that the death, while a result of the insured's voluntary actions, was something unforeseen, unexpected and unusual, or that, as was the case in <u>Hearn</u>, *supra*, the insured died as a result of a miscalculation of his capabilities.

584 So. 2d at 809.[6]

Accordingly, we find that Alabama determines whether a death is "accidental" for insurance purposes based solely on the subjective intent of the insured.

### III. Alabama Law and ERISA

In a footnote, the district court held that if Alabama courts apply a purely subjective test to determine whether a death is accidental, Alabama law would be inconsistent with the principles of ERISA and federal common law – which the district court interpreted to apply both an objective and subjective component – and therefore inapplicable. We disagree.

---

[6]This Court has also had the opportunity to consider the definition of "accident" in Alabama for insurance purposes. In discussing whether an insured's death following surgery constituted an "accident" for purposes of coverage under an accidental death insurance policy, a panel of this Court cited <u>Hairston</u> and <u>Hearn</u> for the proposition that "recovery is precluded only where 'there is a reasonable basis for [the insured's] belief that his conduct makes serious injury or death a virtual certainty.'" <u>Tate v. Government Employees Ins. Co.</u>, 997 F. 2d 1433, 1437 (11th Cir. 1993). There was no mention of any objective or "reasonable man" standard.

9

It is undisputed that federal common law applies both an objective and subjective test to determine the meaning of the term "accident" for purposes of insurance coverage. Buce, 247 F. 3d at 1146-47 (citing Wickman v. NW. Nat'l Ins. Co., 908 F.2d 1077 (1st Cir. 1990)). However, this is not the end of the analysis because, in this case, a choice of law provision exists in both insurance policies. And, as this Court previously held, "[t]he pertinent question is whether the principles of liability agreed upon by the parties are inconsistent with the language of ERISA or the policies that inform the statute and animate the common law of the statute." Id. at 1148.

In Buce, this Court was faced with a very similar conundrum: whether to follow the federal common law and apply both an objective and subjective analysis to determine whether an insured's death was accidental, or follow the choice of law provision contained in the insurance policy and apply Georgia law which utilized a much-criticized "accidental means" analysis. 247 F. 3d at 1146-48.[7] The Buce Court determined that the parties' agreement to apply Georgia law - even though it did not coincide with federal common law - governed in the absence of any evidence that

---

[7]Georgia law distinguishes between the terms "accidental injury" and "injuries resulting from accidental means." Under the "accidental means" analysis, "[t]he focus is on the occurrence or happening which produces the result, not the result itself." 247 F. 3d at 1139.

Georgia's "accidental means" test was unreasonable or fundamentally unfair. Id. at 1148-49.

As in Buce, AIG has not pointed to any language in ERISA's statutory scheme, nor to any cases formulating the common law of ERISA, suggesting that the agreement of the parties to apply Alabama law to these insurance policies would be subversive of ERISA. To the contrary, applying Alabama's purely subjective test to these insurance policies would operate to provide more coverage and protection to beneficiaries, an express purpose of ERISA. Horton v. Reliance Standard Life Ins. Co., 1414 F. 3d 1038, 1041 (11th Cir. 1998) (noting that one of the primary goals of ERISA is the protection of the interests of employees and their beneficiaries in employee benefit plans); accord 29 U.S.C. § 1001. As stated in Buce, "[w]here a choice of law is made by an ERISA contract, it should be followed, if not unreasonable or fundamentally unfair." Buce, 247 F. 3d at 1149 (quoting Wang Laboratories, Inc. v. Kagan, 990 F. 2d 1126, 1128-29 (9th Cir. 1993)). It would be eminently reasonable to apply Alabama law to interpret two insurance policies issued in Alabama, involving an Alabama employee, an Alabama beneficiary, and a loss that occurred in Alabama. We therefore find that the Alabama choice of law provision in the insurance policies at issue is not unreasonable or fundamentally

11

unfair and does not conflict with ERISA. Accordingly, it is appropriate to apply

Alabama's purely subjective test to interpret the policies.[8]

### IV. Intentional Self-Inflicted Injury Exclusion

As an alternative rationale for denying coverage, the district court determined

that Bailey's death fell within the policies' exclusion for "intentionally self-inflicted

injuries."[9] In particular, the district court held that "the choice of jumping from a

moving vehicle necessarily results in injury."

---

[8]AIG argues that Buce directly conflicts with Seamon v. Vaughan, 921 F.2d 1217 (11th Cir. 1991), which AIG reads as a bright-line rule that ERISA preempts all choice of law provisions. Pursuant to the "prior panel rule," AIG therefore argues that Buce should not apply to this case. See Cohen v. Office Depot, Inc., 204 F. 3d 1069, 1072 (11th Cir. 2000) ("Where prior panel decisions conflict, we are bound to follow the oldest one."). Simply put, AIG is wrong. In Seamon, the choice of law provision directly contradicted ERISA's statutory allowance of attorneys' fees to a prevailing plaintiff, 29 U.S.C. § 1132(g). In this case, no such conflicting statutory provision exists. In no way can Seamon be read so broadly to mean that all choice of law provisions in ERISA insurance contracts are to be automatically preempted; rather, only choice of law provisions which directly conflict with the ERISA statute itself are subject to preemption. Seamon, 921 F.2d at 1219. Accordingly, there is no conflict and the "prior panel rule" does not apply.

[9]The exclusion is similar in both policies. In one, coverage is excluded as follows:

No coverage shall be provided under the Policy and no payment shall be made for any loss resulting in whole or in part from, or contributed to by, or as a natural and probable consequence of any of the following excluded risks even if the proximate or precipitating cause of the loss is an accidental bodily injury: (1) suicide or any attempt at suicide or intentionally self-inflicted injury or any attempt at intentionally self-inflicted injury or auto-eroticism . . . .

The other policy provides that it "does not cover any loss caused in whole or in part by, or resulting in whole or in part from, the following: (1) suicide or any attempt at suicide or intentionally self-inflicted injury or any attempt at self-inflicted injury . . . ."

12

Like the term "accident," the term "intentionally self-inflicted injury" is nowhere defined in either policy. However, there is no dispute from a subjective standpoint that Bailey did not intend to harm or kill herself when she jumped out of the moving vehicle. Accordingly, for the same reasons that we find Bailey's death to have been an "accident," we find that the "intentionally self-inflicted injury" exclusions do not apply. This is the same result reached in Hearn on the same issue. See 454 So. 2d at 933.

## Conclusion

The order of the district court granting summary judgment in favor of AIG and denying summary judgment in favor of Tyler is VACATED. The case is REMANDED to the district court for the entry of summary judgment in favor of Tyler and to conduct any further proceedings necessary and appropriate in accordance with this opinion.